IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2009-0035 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| DAVID CHARLES HENRY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20080857

Honorable Richard Nichols, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Alan L. Amann                                       Tucson
                                                                 Attorneys for Appellee

Barton & Storts, P.C.
  By Brick P. Storts, III, and William Perry                                Tucson
                                                                Attorneys for Appellant

E C K E R S T R O M, Presiding Judge.

**¶1**        Following a bench trial, the court convicted appellant David Henry of one count of failing to obtain an identification card or driver's license as a person previously convicted of a sex offense. The court then sentenced Henry to an enhanced term of 3.75 years' imprisonment and ordered him to register as a sex offender. On appeal, Henry argues the court's refusal to dismiss the indictment against him violated principles of double jeopardy and resulted in an ex post facto application of the law. He also contends the court denied him his right to a speedy trial.[1] We affirm his conviction and sentence for the reasons set forth below.

## Factual and Procedural Background

**¶2**        In 1974, Henry was convicted of several felony offenses, one of which was first-degree armed rape committed on May 25, 1974, in violation of former A.R.S. §§ 13-611 and 13-614(C). *See* 1967 Ariz. Sess. Laws, ch. 62, § 9 (former § 13-614(C)); 1962 Ariz. Sess. Laws, ch. 52, § 1 (former § 13-611(A)). On September 8, 2007, a Tucson police officer requested identification from Henry in the course of a traffic stop. Henry could not produce any identification at the time, and certified documents from the Motor Vehicle Division of the Arizona Department of Transportation revealed his last identification card had been issued on October 5, 2001.[2]

---

[1]In his reply brief, Henry withdrew the argument that his conviction violated the separation of powers doctrine in the Arizona Constitution.

[2]The state, apparently misreading these documents, represented to the court that Henry's last identification card had been issued on April 18, 1997. Although Henry did not challenge the error, the disparity between the two dates is irrelevant to this appeal.

¶3        Henry subsequently was arrested and charged with three offenses relating to his status as a sex offender: failure to give notice of a change of address or name on September 8, 2007 (count one); failure to obtain a "nonoperating identification license or a driver license" on September 8, 2007, in violation of A.R.S. §§ 13-3821 and 13-3824 (count two);[3] and failure to give notice of a change of address or name between February 14 and February 26, 2008 (count three).[4] In response, Henry filed a motion to dismiss the indictment on grounds that the charges constituted double jeopardy and that, as applied to him, Arizona's sex offender registration and notification statutes, A.R.S. §§ 13-3821 and 13-3825, were ex post facto laws violating the United States and Arizona Constitutions. The trial court

---

[3]The versions of §§ 13-3821 and 13-3824 in effect when Henry committed the offense are the same in relevant part as the current versions. *See* 2006 Ariz. Sess. Laws, ch. 184, § 1; 2006 Ariz. Sess. Laws, ch. 160, § 3.

[4]Although count two of the indictment cited § 13-3821(E), this subsection specifies the registration requirements for nonresident sex offenders and was not applicable to this case. The trial court later implicitly amended the indictment to reflect that Henry was charged with violating the former § 13-3821(I), which required him to obtain and carry identification, a class six felony. *See* 2006 Ariz. Sess. Laws, ch. 184, § 1; 2006 Ariz. Sess. Laws, ch. 160, § 3. This subsection was renumbered as § 13-3821(J) by 2007 Ariz. Sess. Laws, ch. 176, § 4, where it remains codified today. However, because this amendment did not take effect until September 19, 2007—eleven days after Henry committed the offense charged in count two—the state was technically incorrect in its repeated assertion at oral argument that Henry was convicted of violating § 13-3821(J), not former § 13-3821(I). *See* Ariz. Const. art. IV, pt. 1, § 1(3) (laws generally do not take effect until ninety days after close of legislative session); *Baker v. Superior Court*, 190 Ariz. 336, 339-40, 947 P.2d 910, 913-14 (App. 1997) (operative criminal law generally that in effect on date of offense); *cf. State v. Helmer*, 203 Ariz. 309, ¶¶ 5, 7, 12, 53 P.3d 1153, 1154, 1156 (App. 2002) (when defendant indicted for failure to register as sex offender over period of years, continuing nature of offense allowed trial court to sentence defendant for class four felony rather than class six felony, which offense had been when originally committed).

3

denied the motion. Henry then waived his right to a jury trial and represented himself with the assistance of advisory counsel.

¶4    The trial court dismissed count one of the indictment on the state's motion before trial. It entered a judgment of acquittal on count three and found Henry guilty of count two.[5] After determining Henry had been previously convicted of two felonies, the court sentenced him to a term of 3.75 years in prison and, over his objection, ordered him to register as a sex offender.

## Ex Post Facto

¶5    As he did below, Henry argues his 1974 rape conviction neither subjected him to the laws he was charged with violating, A.R.S. §§ 13-3821 and 13-3824, nor exposed him to the community notification requirements of A.R.S. § 13-3825. Consequently, he contends his present conviction and required registration as a sex offender violated his rights,

---

[5]Henry did not raise the issue of whether the state had shown "actual knowledge of the need to []register as a sex offender or proof of the probability that he had knowledge of the requirement and thereafter failed to [comply with it]," an element of the offense under § 13-3821 imposed by the Due Process Clause and *Lambert v. California*, 355 U.S. 225 (1957). *See State v. Garcia*, 156 Ariz. 381, 382-83, 384, 752 P.2d 34, 35-36, 37 (App. 1987). Although the state did not emphasize Henry's awareness of his general or specific statutory obligations at trial, the court admitted into evidence an exhibit showing Henry had been convicted in 2003 in Pima County cause number CR-20022443 of failing to report a change of address as a registered sex offender. Because we presume the court knew and correctly followed the law in conducting the bench trial, *see State v. Moody*, 208 Ariz. 424, ¶ 49, 94 P.3d 1119, 1138 (2004), we find the evidence was sufficient to support Henry's present conviction. *See State v. Bryant*, 614 S.E.2d 479, 488-89 (N.C. 2005) (sex offender's awareness of obligation to register in one state sufficient, for due process purposes, "to put [him] on notice to inquire into the applicable law of" state to which he moved).

4

guaranteed by both the federal and state constitutions, to be free from ex post facto laws.[6]

We review these legal issues de novo. *See State v. Kuntz*, 209 Ariz. 276, ¶ 5, 100 P.3d 26, 28 (App. 2004) ("Whether the trial court properly applied § 13-3821(A) is a question of law that we review de novo."); *State ex rel. Romley v. Rayes*, 206 Ariz. 58, ¶ 6, 75 P.3d 148, 150 (App. 2003) (ex post facto claims reviewed de novo).

¶6        Ex post facto laws are prohibited by both article I, § 10, cl. 1 of the United States Constitution[7] and article II, § 25 of the Arizona Constitution.[8] Because the language of these provisions is materially the same, we generally interpret them as having the same scope, and we typically follow federal precedent in the area. *See State v. Noble*, 171 Ariz. 171, 173, 829 P.2d 1217, 1219 (1992).

¶7        An ex post facto law is defined exclusively as a law falling into one of the four categories delineated in *Calder v. Bull*, 3 U.S. 386, 390 (1798). *See Carmell v. Texas*, 529 U.S. 513, 537-39 (2000); *Collins v. Youngblood*, 497 U.S. 37, 41-42 (1990); *Noble*, 171 Ariz. at 173-74, 829 P.2d at 1219-20. As *Calder* explained, an ex post facto law is:

---

[6]Because Henry has challenged the general applicability to him of the present-day sex offender registration and monitoring statutes, irrespective of his most recent conviction, we do not limit our ex post facto analysis to the specific provision under which he was convicted, as the state invites us to do.

[7]The federal provision reads, in part: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."

[8]The Arizona provision reads: "No bill of attainder, ex-post-facto law, or law impairing the obligation of a contract, shall ever be enacted."

1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

3 U.S. at 390. In *Noble*, our supreme court concluded that § 13-3821, which requires sex offenders to register with law enforcement agencies or face penalties for failing to do so, "violates the *ex post facto* clause only if it is a 'law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.'" 171 Ariz. at 174, 829 P.2d at 1220, *quoting Calder*, 3 U.S. at 390. We similarly address only the third *Calder* category in the present case. *See id.*

¶8        To determine whether the application of sex offender registration and notification laws inflicts a greater punishment than was provided by law at the time of an offense, the ultimate question to be decided is whether the subsequent laws are punitive or regulatory in nature. *See Noble*, 171 Ariz. at 175, 829 P.2d at 1221; *Ariz. Dep't of Pub. Safety v. Superior Court* (*Falcone*), 190 Ariz. 490, 494, 949 P.2d 983, 987 (App. 1997). Whereas a punitive law cannot be applied retroactively, a regulatory law will withstand an ex post facto challenge. *Falcone*, 190 Ariz. at 494, 949 P.2d at 987.

¶9        When evaluating the punitive or regulatory character of a law, a court first looks to the legislative intent behind it. *See Smith v. Doe*, 538 U.S. 84, 92 (2003); *Noble*, 171

6

Ariz. at 175, 829 P.2d at 1221; *Falcone*, 190 Ariz. at 494, 949 P.2d at 987. If the legislature intended a nonpunitive purpose, a court must then inquire "'whether the statutory scheme [i]s so punitive either in purpose or effect as to negate that intention.'" *Noble*, 171 Ariz. at 175, 829 P.2d at 1221, *quoting United States v. Ward*, 448 U.S. 242, 248-49 (1980); *accord Smith*, 538 U.S. at 92; *Falcone*, 190 Ariz. at 495, 949 P.2d at 988. A person challenging a purportedly nonpunitive law on ex post facto grounds must demonstrate by "'the clearest proof'" that the law is in fact punitive. *Smith*, 538 U.S. at 92, *quoting Hudson v. United States*, 522 U.S. 93, 100 (1997); *accord Falcone*, 190 Ariz. at 496, 949 P.2d at 989.

Statutes

**¶10** Arizona's first sex offender registration statute was enacted in 1951. *See* 1951 Ariz. Sess. Laws, ch. 105, § 1; *Fushek v. State*, 218 Ariz. 285, n.2, 183 P.3d 536, 538 n.2 (2008). Under what first was codified as § 43-6117 of the 1939 Arizona Code (Supp. 1952), a person convicted of an enumerated sex offense such as rape was required to register with the sheriff of his county of residence, have his photograph taken, be fingerprinted, and provide a written statement required by the state's bureau of criminal identification. These materials were only shared with law enforcement officers, and the failure to register or update one's residential information after moving was a misdemeanor. 1951 Ariz. Sess. Laws, ch. 105, § 1.

**¶11** When the Arizona Code was revised in 1956, former § 43-6117 was separated into four sections. *See* 1956 Ariz. Sess. Laws, 3d Spec. Sess., ch. 3, § 1. Sex offender

registration in general was required by A.R.S. § 13-1271; the requirement that sex offenders inform the sheriff of an address change was codified in A.R.S. § 13-1272; public access to a sex offender's information was prohibited by A.R.S. § 13-1273; and any violation of the registration statutes was punishable as a misdemeanor pursuant to A.R.S. § 13-1274.[9]

¶12    In 1977, the legislature again renumbered the principal sex offender registration statute, former § 13-1271, as A.R.S. § 13-3821, making minor changes to it in the process. *See* 1977 Ariz. Sess. Laws, ch. 142, § 115. The legislature also specified that a violation of registration requirements was punishable as a class two misdemeanor. *See* 1977 Ariz. Sess. Laws, ch. 142, § 116 (amending former § 13-1274 and renumbering it as A.R.S. § 13-3824). Lawmakers then repealed § 13-3821 in 1978, with the result that our state was without a registration statute for over five years.[10] *See* 1978 Ariz. Sess. Laws, ch. 201, § 242; *State v. Lammie*, 164 Ariz. 377, 378, 793 P.2d 134, 135 (App. 1990), *disagreed with on other grounds by State v. Peek*, 219 Ariz. 182, ¶¶ 15-17, 195 P.3d 641, 644 (2008). In 1983, the legislature enacted the modern sex offender registration statute, A.R.S. § 13-3821, which at its inception was substantially similar to its predecessor. *See* 1983 Ariz. Sess. Laws, ch. 202, § 13. Since that time, "the registration and monitoring statutes, A.R.S.

_____

[9]Henry mistakenly asserts in his opening brief that, "[a]t the time of [his] conviction there was no such thing as sex offender registration."

[10]Former §§ 13-1272 and 13-1273, which were renumbered as A.R.S. §§ 13-3822 and 13-3823, respectively, *see* 1977 Ariz. Sess. Laws, ch. 142, § 114, remained in place, as did § 13-3824.

§§ 13-3821 to [13]-3829, have undergone several changes." *Fushek*, 218 Ariz. 285, n.2, 183 P.3d at 538 n.2.

¶13     For instance, in 1985 the legislature began to loosen restrictions on who could access a sex offender's information, permitting disclosure to others than law enforcement officers for the first time. *See* 1985 Ariz. Sess. Laws, ch. 54, § 2 (granting access to potential employers and child welfare agencies). As our supreme court recently summarized in *Fushek*:

> Access to registration information is today considerably broader. In 1998, the legislature provided for a sex offender website, making the information of some offenders available to the public at large. 1998 Ariz. Sess. Laws, ch. 291, § 5 (codified as amended at A.R.S. § 13-3827). In addition, the current statute requires that individuals and groups in the communities where offenders live and work be notified of the offenders' presence. A.R.S. §§ 13-3825(C), (G), 13-3826(E)(1)(a).

218 Ariz. 285, n.6, 183 P.3d at 541 n.6.[11]

¶14     Section 13-3821 was amended in 2001 to apply expressly to people such as Henry who had been convicted of certain sexual offenses under Arizona laws in effect before 1978. 2001 Ariz. Sess. Laws, ch. 109, § 2. The legislature provided for retroactive application of community notification requirements in § 13-3825(I), and we assume it similarly intended that additional statutes relating to sex offender registration and monitoring

---

[11]The subsections *Fushek* cited have not materially changed. *See* 2008 Ariz. Sess. Laws, ch. 9, § 1.

9

apply retroactively.[12]  *See Fushek*, 218 Ariz. 285, n.2, 183 P.3d at 538 n.2.  The specific provisions of these statutes, detailed by the court in *Fushek*, include requirements that sex offenders register for life for most qualifying offenses;[13] notify law enforcement of any change of name or address;[14] report any enrollment or employment at post-secondary educational institutions to the sheriff of that county;[15] notify law enforcement of any online identifiers, such as e-mail addresses or screen names, disclose where they are used, annually confirm them, and promptly report any changes to them;[16] and annually update and continuously carry an identification card or driver's license.[17]  *Id.* ¶¶ 23-25 & nn.7-8.  Sex offenders must also provide law enforcement officials with a DNA sample.  § 13-3821(O).

¶15        As the duties placed on sex offenders and the access to their information have steadily increased over the years, so, too, have the penalties for failing to comply with

---

[12]Authorities are divided whether the terms "retroactive" and "retrospective" have the same or different meanings.  *Compare* 16B Am. Jur. 2d *Constitutional Law* § 735 (2009) ("The terms 'retrospective' and 'retroactive' are frequently used interchangeably, even though, in fact, they have different meanings . . . ."), *with Black's Law Dictionary* 1318, 1319 (7th ed. 1999) (defining "retroactive law" and "retrospective law" as interchangeable).  Our supreme court appears to use the terms interchangeably, *compare Fushek*, 218 Ariz. 285, n.2, 183 P.3d at 583 n.2, *with Noble*, 171 Ariz. at 174, 829 P.2d at 1220, and we therefore draw no critical distinction between them.

[13]§ 13-3821(D), (F)–(H), (M).

[14]*See* §§ 13-3821(I); 13-3822(A)–(B).

[15]§ 13-3821(N).

[16]*See* §§ 13-3821(I)–(J), (P), (R); 13-3822(C).

[17]*See* § 13-3821(I), (J).

10

registration requirements. In 1985, the penalty for failing to register was increased from a class two misdemeanor to a class six felony. 1985 Ariz. Sess. Laws, ch. 364, § 33. In 1998, failure to comply with any registration requirement was deemed a class four felony. *See* 1998 Ariz. Sess. Laws, ch. 291, § 3 (former § 13-3824). The legislature made a brief exception to this rule in 2004 when it designated the failure to update and carry an identification card a class one misdemeanor subject to a mandatory $250 assessment upon conviction. 2004 Ariz. Sess. Laws, ch. 142, § 3. However, in 2006 it reclassified the offense a class six felony, leaving the financial assessment in place. 2006 Ariz. Sess. Laws, ch. 160, § 3. Today, failure to update or carry photographic identification remains a class six felony, as is the failure to annually confirm one's online identifiers. §§ 13-3824(B), 13-3821(J). All other registration violations are punished as class four felonies. § 13-3824(A).

Intent

¶16        In conducting our ex post facto analysis of §§ 13-3821, 13-3825, and the other related statutes, we first inquire "'whether the legislative aim was to punish [an] individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation.'" *Noble*, 171 Ariz. at 175, 829 P.2d at 1221, *quoting De Veau v. Braisted*, 363 U.S. 144, 160 (1960) (alteration in *Noble*). When analyzing the version of § 13-3821 enacted in 1983 to determine whether it was punitive or regulatory, the court in *Noble* noted there was scant legislative history of the statute's purpose. *See id.* Balancing both the punitive and regulatory effects of the law, however, the

11

court ultimately concluded § 13-3821 primarily served the nonpunitive goal of "facilitating the location of child sex offenders by law enforcement." 171 Ariz. at 178, 829 P.2d at 1224; *see also In re Maricopa County Juv. Action No. JV-132744*, 188 Ariz. 180, 183, 933 P.2d 1248, 1251 (App. 1996) (recognizing nonpunitive purpose behind juvenile sex offender registration).

¶17 Upon reexamining the sex offender registration scheme in *Falcone*, Division One of this court found express evidence of nonpunitive purposes behind the community notification statute in effect in 1997, 190 Ariz. at 495, 949 P.2d at 988, which did not then require any community notification via the internet. *See* 1997 Ariz. Sess. Laws, ch. 136, § 25. The *Falcone* court observed "the legislature furnished ample indication that it intended to protect communities, not punish sex offenders." 190 Ariz. at 495, 949 P.2d at 988. When internet publication of certain sex offenders' information was later instituted, former § 13-3827(A) provided: "The purpose of the [Department of Public Safety's] internet sex offender website is to provide sex offender information to the public." 1998 Ariz. Sess. Laws, ch. 291, § 5.

Effects

¶18 Because the legislature has indicated nonpunitive purposes for sex offender registration and notification laws, we next consider whether the laws' punitive effects outweigh their regulatory purposes. *See Noble*, 171 Ariz. at 175, 829 P.2d at 1221; *see also Smith*, 538 U.S. at 92; *Falcone*, 190 Ariz. at 495, 949 P.2d at 988. In conducting this

12

analysis, we consider the various factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), *see Noble*, 171 Ariz. at 175, 829 P.2d at 1221, in addition to any other relevant considerations. *See Smith*, 538 U.S. at 97 (*Mendoza-Martinez* factors provide "useful framework" but are "'neither exhaustive nor dispositive'" when determining if statute punitive), *quoting Ward*, 448 U.S. at 249. The factors listed in *Mendoza-Martinez* are

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

372 U.S. at 168-69 (footnotes omitted). Bearing these factors in mind, courts assess "the effects of the registration requirement on convicted sex offenders and . . . the rationality between the requirement and its purported non-punitive function." *Noble*, 171 Ariz. at 175, 829 P.2d at 1221.

¶19        In *Smith*, the United States Supreme Court held that Alaska's Sex Offender Registration Act, which established a registration and public notification scheme similar to Arizona's, was regulatory in character rather than punitive and therefore did not violate the Ex Post Facto Clause when retroactively applied to offenders convicted before the Act's passage. 538 U.S. at 89-90, 105-06. Neither party has cited *Smith* in its briefs. Without

13

rehashing its analysis at length here, we find it necessary to touch upon two points in affirming Henry's conviction and sentence.

¶20    First, although the Arizona Supreme Court expressly found sex offender registration to be a traditional form of punishment, *Noble*, 171 Ariz. at 176, 829 P.2d at 1222, *Smith* thereafter found the contrary. 538 U.S. at 97-99. However, because *Noble* drew this conclusion from American cultural and legal traditions broadly rather than from Arizona's in particular, we do not interpret *Noble*'s analysis as representing or requiring a departure from federal precedent. Indeed, *Smith* and *Noble* similarly analyzed the stigmatizing effect of sex offender registration. *Compare Smith*, 538 U.S. at 98 ("[T]he stigma . . . results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment."), *with Noble*, 171 Ariz. at 177, 829 P.2d at 1223 ("[T]he provisions in the statute limiting access to the registration information significantly dampen its stigmatic effect. . . . [M]uch of the information that convicted sex offenders must provide under § 13-3821 is available . . . independent of the registration statute.") (citations omitted). To the extent these cases conflict, we regard *Noble*'s finding that registration has been traditionally viewed as a form of punishment under the Ex Post Facto Clause of the United States Constitution as having been undermined by *Smith*.

14

¶21 Second, in upholding Alaska's Sex Offender Registration Act, the United States Supreme Court acknowledged that the registration system's similarities to probation or supervised release presented a forceful argument that the Act was punitive. *Smith*, 538 U.S. at 101. The Court noted, however, that the Act specified no procedures for implementing the statute's requirements. 538 U.S. at 96. Arizona's statutes, by contrast, contain implementation procedures for law enforcement agencies and provide for enforcing registration laws not through administrative means, but through criminal prosecution. *See* §§ 13-3822(B), 13-3825(B). In this way, Arizona's scheme is even more analogous to probation or supervised release than the Alaska scheme addressed in *Smith*.[18]

¶22 Yet, Arizona's supreme court previously has upheld our sex offender registration system as regulatory despite its codification in title 13, A.R.S., our criminal code; its enforcement solely through criminal prosecution; and its designation of registration violations as felony offenses. *See Noble*, 171 Ariz. at 172-73, 178, 829 P.2d at 1218-19, 1224; *see also Fushek*, 218 Ariz. 285, ¶ 18, 183 P.3d at 541 ("*Noble* held that the then-extant sex offender registration statute could be applied to defendants who had committed their crimes before the statute's enactment without violating the ex post facto clauses of the

---

[18]At oral argument, counsel for Henry erroneously sought to distinguish *Smith* on the ground that Alaska's registration scheme imposed only misdemeanor sanctions for violations. *See Smith*, 538 U.S. at 96 (observing Alaska's "scheme is enforced by criminal penalties" and citing Alaska Stat. §§ 11.56.835 and 11.56.840); *see also* Alaska Stat. § 11.56.835(d) ("Failure to register as a sex offender or child kidnapper in the first degree is a class C felony.").

federal and state constitutions."). Our controlling jurisprudence therefore prevents this court from distinguishing on this basis the Alaska scheme the United States Supreme Court found regulatory in nature from the Arizona scheme Henry now challenges.

¶23 Moreover, although the registration and notification laws certainly have some punitive effects, our legislature has taken steps to tailor the statutes to serve more precisely their nonpunitive ends. For example, mandatory community and website notification is required only for offenders deemed to pose a heightened risk to the community, *see* §§ 13-3825(C), 13-3826(E), 13-3827(A), and other provisions limit public disclosure of an offender's online identifiers. § 13-3827(D), (E). In addition, A.R.S. § 13-923, the statute under which a trial court reviews the probation of sex offenders younger than age twenty-two, also allows a court to terminate both registration and community notification requirements pursuant to §§ 13-3821(H) and 13-3825(L).

¶24 Although neither *Noble* nor *Falcone* analyzed the exact registration scheme we address here, many of the salient components of the current statutes already existed in some form and were addressed in those cases. Indeed, in *Noble* our supreme court considered Arizona's first registration scheme authorizing potential felony imprisonment sanctions and found it applicable to defendants who had faced no registration requirements at all when they committed their predicate offenses. *See Noble*, 171 Ariz. at 172-73, 178, 829 P.2d at 1218-19, 1224. Although Henry has maintained on appeal that *Noble* should be overruled, he acknowledges this court is constrained by the decisions of our supreme court. *See State v.*

16

*Sullivan*, 205 Ariz. 285, ¶ 15, 69 P.3d 1006, 1009 (App. 2003). We recognize, as discussed earlier, that the registration requirements have become decidedly more burdensome since *Noble* addressed the issue. However, because *Smith* controls our analysis here, we are compelled to conclude that Arizona's sex offender registration and notification statutes do not constitute impermissible ex post facto laws as applied to Henry.

¶25        Although we follow *Smith* today, we might well have reached a different result under controlling state precedent predating *Smith*. *See Noble*, 171 Ariz. at 173, 829 P.2d at 1219 (cautioning against blind adherence to federal precedent). When *Noble* examined the sex offender registration system in effect nearly eighteen years ago to determine whether § 13-3821 constituted an impermissible ex post facto law, our state supreme court noted, after balancing the *Mendoza-Martinez* factors, that its "decision [wa]s close." 171 Ariz. at 178, 829 P.2d at 1224. In ultimately finding the then-existing regime applicable retroactively, the court acknowledged the traditionally punitive nature and "stigmatic effect" of registration provisions but emphasized that the specific statutory scheme before it mitigated any such punitive effect. *Noble*, 171 Ariz. at 176-77, 178, 829 P.2d at 1222-23, 1224. "Registrants are not forced to display a scarlet letter to the world; outside of a few regulatory exceptions, the information provided . . . pursuant to the registration statute is kept confidential." *Id.* at 178, 829 P.2d at 1224. As Henry correctly observes, the Arizona legislature has since removed those features of the scheme protecting the confidentiality of an offender's registration status and now specifically requires broad community disclosure

17

of that status for most classes of offenders, including notification of the registrant's neighbors and prospective employers. *See* § 13-3826(E)(1)(a); 1997 Ariz. Sess. Laws, ch. 136, § 26. Thus, under the scheme we address here, sex offenders are not only "forced to display a scarlet letter to the world," but state authorities are required to shine a spotlight on that letter.

¶26 Noting these very developments, our supreme court recently has held that sex offender registration is a sufficiently severe potential consequence for a sexually motivated misdemeanor that a person so charged has a right to a trial by jury under article II, § 24 of the Arizona Constitution. *Fushek*, 218 Ariz. 285, ¶¶ 26, 30, 183 P.3d at 542-44. In so ruling, the court noted that the language of article II, § 24 is "virtually identical to that of the Sixth Amendment" and, consequently, our courts have interpreted them to provide the same protections. *Fushek*, 218 Ariz. 285, ¶ 8, 183 P.3d at 539. Although *Fushek* made clear that the issue of "whether sex offender registration is criminal punishment for ex post facto purposes" was not before the court in that case, *id.* ¶ 19, "the protections provided by the Sixth Amendment are available only in 'criminal prosecutions.'" *Ward*, 448 U.S. at 248, *quoting* U.S. Const. amend. VI. Thus, our adherence to *Smith* today requires us to conclude that, under Arizona law, sex offender registration is both a sufficiently severe sanction to trigger the Sixth Amendment right to a jury trial and a nonpunitive civil regulation for purposes of the Ex Post Facto Clause—results we find difficult to harmonize. *Cf. Ward*, 448 U.S. at 254 (observing "it would be quite anomalous to hold that § 311(b)(6) [of the Federal

18

Water Pollution Control Act] created a criminal penalty for the purposes of the Self-Incrimination Clause but a civil penalty for all other purposes"). As an intermediate appellate court, however, we are bound to uphold the application of sex offender registration and notification statutes that are not meaningfully distinguishable from those in *Smith*.

### Double Jeopardy

¶27        Apart from citing the Fifth Amendment to the United States Constitution and article II, § 10 of the Arizona Constitution, Henry has failed to develop an argument in his opening brief that his conviction and sentence violate the prohibition against double jeopardy. We therefore need not address the issue. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (opening brief must contain citations to record and argument for each issue raised); *State v. Cons*, 208 Ariz. 409, ¶ 18, 94 P.3d 609, 616 (App. 2004) (failure to develop argument properly in opening brief results in waiver of issue on appeal). However, given our conclusion that sex offender registration is a nonpunitive, regulatory scheme pursuant to *Noble* and *Smith*, we would not find Henry's conviction for violating Arizona's registration statutes to constitute double jeopardy even if the issue had been presented properly to this court. *See E.B. v. Verniero*, 119 F.3d 1077, 1092 (3d Cir. 1997) ("[N]either [the Ex Post Facto nor the Double Jeopardy C]lause is implicated unless the state has inflicted 'punishment.'").

**Speedy Trial**

¶28 Henry last contends "the trial court erred in denying [his] motion to dismiss the charges for [a] violation of his right to a speedy trial." A transcript attached as an exhibit to Henry's motion below shows that certain charges against him in a different cause, number CR-20073489, were dismissed without prejudice at the state's request due to the inability of a state's witness to testify at Henry's trial. The indictment in that case is not included in the record on appeal, and there is otherwise scant evidence of the procedural history of the case. The record does not clearly show, as Henry asserts, that the previously dismissed charges were refiled as counts one and two of the present indictment. The relevance of the earlier cause number, therefore, has not been established, and we find the record insufficient to allow appellate review of the issue. *See State v. Rivera*, 168 Ariz. 102, 103, 811 P.2d 354, 355 (App. 1990) (appellant has duty to ensure record contains any document necessary to argument; court will not speculate on content not in record).

¶29 Even if the appellate record were more extensively developed, we would still reject Henry's argument. Without providing any standard of review for the issue he raises, and with minimal support from legal authorities, *see* Ariz. R. Crim. P. 31.13(c)(1)(vi), Henry contends "[t]he prosecutor's argument that she was dismissing [the earlier charges] because she didn't have a witness, rather than to avoid Rule 8[, Ariz. R. Crim. P.,] is frivolous," given that her own actions in "wait[ing] until the last minute to attempt to subpoena [the witness] . . . put her in a position to have to move to dismiss to avoid the time requirements."

20

¶30     Rule 8.2(a) requires that defendants be tried within a certain number of days from arraignment, and Rule 16.6(a), Ariz. R. Crim. P., permits a court to dismiss charges on the state's motion only "upon finding that the purpose of the dismissal is not to avoid the provisions of Rule 8." Hence, the trial court already had determined the prosecutor did not seek a dismissal to avoid the requirements of Rule 8. And, as the state points out, the record shows there were difficulties in locating and securing the presence of the witness at the previously scheduled trial. In any event, "the proper method to raise the issue was through a motion for reconsideration or petition for special action filed in [CR-20073489], not by a motion to dismiss" in the present case. *State v. Paris-Sheldon*, 214 Ariz. 500, ¶ 23, 154 P.3d 1046, 1054 (App. 2007). Consequently, we lack jurisdiction to review the propriety of the earlier dismissal. *See id.* ¶ 20.

**Disposition**

¶31     For the foregoing reasons, Henry's conviction and sentence are affirmed.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Judge

21