VÁSQUEZ, Presiding Judge:
¶1 After a jury trial, Oscar Trujillo was convicted of sexual abuse. The trial court suspended the imposition of sentence and placed him on three years' probation. On appeal, Trujillo argues the court erred by ordering him to register as a sex offender pursuant to A.R.S. § 13-3821(A)(3) because there was no jury determination of the victim's age. He also contends the court erred in precluding impeachment evidence about a state witness. For the following reasons, we affirm.
Factual and Procedural Background
¶2 We view the facts and all reasonable inferences therefrom in the light most favorable to affirming Trujillo's conviction. See State v. Granados , 235 Ariz. 321, ¶ 2, 332 P.3d 68, 70 (App. 2014). In April 2015, fifteen-year-old M.A.C. left his home in Honduras to seek asylum in the United States. When he walked across the United States-Mexico border into McAllen, Texas, United States Border Patrol agents took him to an immigration office in Texas, where he stayed for three days before being transferred to a refugee facility in Tucson called Southwest Key. A social worker told M.A.C. he would stay there until his father "had all the necessary paperwork in order" and then M.A.C. could go live with him.
¶3 One morning, M.A.C. was lying on his bed when Trujillo, a youth-care worker at Southwest Key, entered the room. According to Trujillo's supervisor, workers at Southwest Key are not allowed to enter the children's bedrooms "for any reason unless it's [an] emergency," and then "they are to request a witness as they're going into the room so they're not alone." When M.A.C. asked if it was time to get up, Trujillo said, "No.... I'm going to tickle you," and proceeded to touch M.A.C.'s chest and stomach over his clothing. Trujillo left, and M.A.C. stayed in bed awaiting instructions to get up. A few minutes later, Trujillo returned and "tickl[ed]" M.A.C.'s penis over his clothing. Trujillo left, and M.A.C. remained in bed. Shortly thereafter, Trujillo returned a third *382 time and again touched M.A.C.'s penis over his clothing. Trujillo tried to "lift" M.A.C.'s underwear, but M.A.C. told him to stop.
¶4 Trujillo then responded that "he thought [M.A.C.] wanted him to do that." Trujillo told M.A.C. not to tell anyone because "[Trujillo] would get into trouble" and be "suspended from his job." Although M.A.C. agreed, he later that day asked to speak with a counselor and reported the incident.
¶5 A grand jury indicted Trujillo for one count of sexual abuse. While testifying at trial, Trujillo denied touching M.A.C. in any way and instead explained that he went "in and out" of M.A.C.'s room that morning to "give him hair gel and toothpaste." Trujillo was convicted as charged and placed on probation as described above. At sentencing, the trial court ordered him to register as a sex offender pursuant to § 13-3821(A)(3). Trujillo objected, arguing the statute did not apply because there was no jury finding of M.A.C.'s age. The court disagreed that a jury finding was necessary but stated it would modify its order if convinced the ruling was erroneous.
¶6 The next day, Trujillo filed a "Motion for Modification of Sentence," requesting that the trial court "remove the registration requirement imposed." He maintained, "The Sixth Amendment reserves to juries the determination of any fact, other than the fact of a prior conviction, that increases a criminal defendant's maximum potential sentence." Citing Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Southern Union Co. v. United States , 567 U.S. 343, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012), he argued that a jury must make the necessary factual determinations for "any penalties inflicted for the commission of an offense," and he asserted that "[r]egistration is a penalty." "[B]ecause the age of the victim was not implicit in the offense and there was no jury finding of the victim's age being under eighteen," Trujillo reasoned that § 13-3821(A)(3) did not apply.
¶7 At the end of the hearing on Trujillo's motion, the trial court stated it had directed the probation officer not to require Trujillo to register as a sex offender until the matter was fully resolved. The court ultimately issued an under-advisement ruling denying Trujillo's motion and ordering him to register as a sex offender in accordance with its original order at sentencing. This appeal followed.[1] We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).
Sex-Offender Registration
¶8 Relying on Apprendi and Southern Union Co. , as he did below, Trujillo argues "[t]he trial court erred in ordering sex offender registration when there had not been a jury determination of M.A.C.'s age." Because this argument presents a question of law involving § 13-3821, our review is de novo. See State v. Kuntz , 209 Ariz. 276, ¶ 5, 100 P.3d 26, 28 (App. 2004) ; see also State v. Benenati , 203 Ariz. 235, ¶ 7, 52 P.3d 804, 806-07 (App. 2002).
¶9 Pursuant to § 13-3821(A) :
A person who has been convicted of ... a violation or attempted violation of any of the following offenses ... within ten days after the conviction or adjudication or within ten days after entering and remaining in any county of this state, shall register with the sheriff of that county:
....
3. Sexual abuse pursuant to [A.R.S.] § 13-1404 if the victim is under eighteen years of age.
And "[a] person commits sexual abuse by intentionally or knowingly engaging in sexual contact with any person who is fifteen or more years of age without consent of that person." § 13-1404(A).
¶10 In Apprendi , after reexamining its cases and the history "upon which they rely," the Supreme Court held that, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable *383 doubt." 530 U.S. at 490, 120 S.Ct. 2348. In Southern Union Co. , the Court extended Apprendi to criminal fines imposed on an organizational defendant, explaining that "juries must determine facts that set a fine's maximum amount." 567 U.S. at 346, 356, 132 S.Ct. 2344. The Court pointed out, "Criminal fines, like ... other forms of punishment, are penalties inflicted by the sovereign for the commission of offenses." Id. at 349, 132 S.Ct. 2344. Indeed, this is particularly true for "organizational defendants who cannot be imprisoned." Id. In the present case, the issue is whether the jury requirement set forth in Apprendi applies to sex-offender registration under § 13-3821(A)(3).
¶11 To answer this question, the trial court focused on "whether sex registration is a penalty." It compared State v. Noble , 171 Ariz. 171, 829 P.2d 1217 (1992), upon which the state relied, with Fushek v. State , 218 Ariz. 285, 183 P.3d 536 (2008), upon which Trujillo relied. In rejecting Trujillo's argument, the court found Noble controlling because the context of that case was "more closely analogous" and it therefore concluded that sex-offender registration was not punishment. For the reasons discussed below, we conclude neither Noble nor Fushek directly address what is, at bottom, an Apprendi issue: Whether a trial court may find the victim's age for purposes of registration under § 13-3821(A)(3), or must that determination be made by a jury. However, both decisions are instructive, and, because Trujillo's argument on appeal focuses on these cases, we turn to them.
¶12 In Noble , the issue was whether requiring the defendants to register as sex offenders pursuant to § 13-3821, enacted after they committed their offenses, violated the Ex Post Facto Clause of the state or federal constitutions. 171 Ariz. at 171-72, 829 P.2d at 1217-18. Our supreme court first noted that retroactive application of the statute "violates the ex post facto clause only if it is a 'law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.' " Id. at 174, 829 P.2d at 1220 (quoting Calder v. Bull , 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) ). The court then addressed "whether registration under § 13-3821 constitutes punishment." Id. at 175, 829 P.2d at 1221. After finding "[t]he legislative history behind § 13-3821 does not indicate whether the statute was intended to be punitive or regulatory," the court applied the Mendoza-Martinez[2] factors, which include, among other things, " 'whether [the sanction] has historically been regarded as a punishment' " and " 'whether its operation will promote the traditional aims of punishment-retribution and deterrence.' " Id. (quoting Kennedy v. Mendoza-Martinez , 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) ).
¶13 In balancing the Mendoza-Martinez factors, the supreme court determined § 13-3821"has both punitive and regulatory effects." Id. at 178, 83 S.Ct. 554. However, the court concluded that "[t]he most significant factor in this case is [the] determination that ... the overriding purpose of § 13-3821 is facilitating the location of child sex offenders by law enforcement personnel, a purpose unrelated to punishing [the defendants] for past offenses." Id. The court additionally noted that the "potentially punitive aspects of the statute have been mitigated" because "the information provided by sex offenders ... is kept confidential." Id. Although recognizing that the "decision is close," the court nonetheless determined that "requiring convicted sex offenders to register pursuant to § 13-3821 is not punishment" and, therefore, applying the statute retroactively did not violate the Ex Post Facto Clause of the state or federal constitutions. Id.
¶14 In Fushek , the issue was whether Arizona's constitution guarantees a jury trial to a misdemeanor defendant when the state files an allegation of sexual motivation pursuant to A.R.S. § 13-118.[3] 218 Ariz. 285, ¶ 1, 183 P.3d at 538. Under § 13-3821(C), if the *384 trier of fact finds the defendant guilty and the sexual-motivation allegation proven, the trial court has discretion to require the defendant to register as a sex offender.[4] Id. ¶ 2. The court noted that, like the federal constitution, the state constitution "preserve[s] the right to jury trial only for 'serious,' as opposed to 'petty,' crimes." Id. ¶ 8 (quoting Derendal v. Griffith , 209 Ariz. 416, ¶ 13, 104 P.3d 147, 151 (2005) ). The court thus looked to Blanton v. City of North Las Vegas , 489 U.S. 538, 541, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989), to guide its analysis of "whether an offense is 'serious,' " with "the most relevant criterion" being " 'the severity of the maximum authorized penalty.' " Id. ¶ 9 (quoting Blanton , 489 U.S. at 541, 109 S.Ct. 1289 ). The court noted however that in determining the seriousness of a crime, Blanton also required consideration of "the other penalties that ... attach[ ] to the offense." Id. ¶ 11 (quoting Blanton , 489 U.S. at 542, 109 S.Ct. 1289 ).
¶15 Fushek thus turned on "whether registration as a sex offender is such a grave consequence that it 'reflect[s] a legislative determination that the offense is indeed serious.' " Id. ¶ 17 (quoting Derendal , 209 Ariz. 416, ¶ 21, 104 P.3d at 153 ). The supreme court rejected the state's argument that, based on Noble , registration cannot be considered a "penalty" under this analysis. Id. ¶ 18. It pointed out that a different test considering whether registration was civil or criminal applied in Noble , whereas the test in Fushek focused on whether registration "is sufficiently severe to trigger the right to a jury trial." Id. ¶ 19. The court considered the specific provisions of the relevant statutes, pointing out that registration was a "lifelong obligation" that required offenders to provide, among other things, all names by which they are known, mailing and physical addresses, fingerprints, and photographs. Id. ¶¶ 22-25. It additionally noted that "[w]idespread publicity accompanies sex offender registration" and that certain offenders' information will appear on the sex-offender website. Id. ¶ 26. The court thus concluded that "the potential of sex offender registration reflects a legislative determination that [the defendant] ha[d] been charged with serious crimes." Id. ¶ 30. Accordingly, he was entitled to a jury trial. Id.
¶16 On appeal, Trujillo argues that the question presented here is "much more similar" to the issue in Fushek , suggesting that case "is controlling." He further contends Fushek and Southern Union Co. both relied on Blanton , making "the Blanton analysis of seriousness ... clearly important in determining whether the jury must determine factors that require ... sex offender registration." He thus maintains "the trial court erred in finding that the controlling question was regulatory-versus-punitive as stated in Noble instead of whether the imposition of sex offender registration is substantial enough to trigger the Sixth Amendment jury trial guarantee."
¶17 Although the trial court found the situation in Noble "more closely analogous," we acknowledge that Noble addresses an issue different than the one presented here. In Noble , the court determined that sex-offender registration is not a "punishment." 171 Ariz. at 178, 829 P.2d at 1224. But in Apprendi , the Court used the terms "punishment" and "penalty" interchangeably. 530 U.S. at 490, 120 S.Ct. 2348. And in Fushek , our supreme court rejected the state's argument "that [sex-offender] registration cannot be considered a statutory 'penalty' under the Derendal collateral consequences test." 218 Ariz. 285, ¶ 18, 183 P.3d at 541. We therefore recognize that sex-offender registration has been viewed as a penalty in certain contexts.
*385 ¶18 Trujillo's argument thus has some facial appeal. The right to a jury trial based on the seriousness of an offense, see Blanton , 489 U.S. at 539-41, 109 S.Ct. 1289 ; see also Fushek , 218 Ariz. 285, ¶¶ 7-9, 183 P.3d at 539, and the right to have a jury determine any fact that increases a defendant's sentence beyond the prescribed statutory maximum, see Apprendi , 530 U.S. at 490, 120 S.Ct. 2348, are both rooted in the right to a jury trial, see U.S. Const. amend. VI ; see also Blanton , 489 U.S. at 545, 109 S.Ct. 1289 ; Apprendi , 530 U.S. at 476-77, 120 S.Ct. 2348. They are nonetheless separate, distinct issues, involving different considerations. The former-the right to a jury trial-is determined by the seriousness of the offense, and "the seriousness of a crime can be reflected not only in the maximum authorized prison term, but also 'in the other penalties that it attaches to the offense.' " Fushek , 218 Ariz. 285, ¶ 11, 183 P.3d at 540 (quoting Blanton , 489 U.S. at 542, 109 S.Ct. 1289 ). The latter arises only when a defendant is entitled to a jury trial and concerns which facts must be submitted to a jury and proven beyond a reasonable doubt in relation to the penalty that may be imposed upon conviction. See Apprendi , 530 U.S. at 490, 120 S.Ct. 2348. However, it does not necessarily follow that the maximum authorized prison term plus sex-offender registration automatically entitles a defendant to a jury finding of the factor upon which an order requiring registration is based. As the court did in Fushek , we "reject this mechanistic approach." 218 Ariz. 285, ¶¶ 20-21, 183 P.3d at 541-42.
¶19 After Fushek , we can no longer say that sex-offender registration is not a penalty "under the Derendal collateral consequences test." Fushek , 218 Ariz. 285, ¶¶ 18, 30, 183 P.3d at 541, 543-44. But we echo the reasoning of Noble and conclude that sex-offender registration pursuant to § 13-3821(A)(3) is not a penalty that increases the statutory maximum sentence for sexual abuse under § 13-1404(A). Simply put, "the overriding purpose of § 13-3821 is facilitating the location of child sex offenders by law enforcement personnel." Noble , 171 Ariz. at 178, 829 P.2d at 1224. This purpose is regulatory in nature, not punitive. Id . ; see also Ariz. Dep't of Pub. Safety v. Superior Court , 190 Ariz. 490, 495, 949 P.2d 983. 988 (App. 1997) (despite little evidence of legislative intent behind § 13-3821, in later passing community-notification statute, "legislature furnished ample indication that it intended to protect communities, not punish sex offenders"); In re Sean M ., 189 Ariz. 323, 325, 942 P.2d 482, 484 (App. 1997) (purpose of sex-offender registration grounded in public policy). And because sex-offender registration is not a penalty in this context, Apprendi does not apply to § 13-3821(A)(3).
¶20 Trujillo further argues, however, that "changes in the statutory requirements since Noble was decided may ... mean that Noble is no longer good law." He directs us to State v. Henry , 224 Ariz. 164, ¶ 26, 228 P.3d 900, 908 (App. 2010), in which this court recognized that "under Arizona law, sex offender registration is both a sufficiently severe sanction to trigger the Sixth Amendment right to a jury trial and a nonpunitive civil regulation for purposes of the Ex Post Facto Clause"-something we found "difficult to harmonize." But in Henry , we concluded that the application of the sex-offender registration requirements to the defendant did not violate the Ex Post Facto Clause. 224 Ariz. 164, ¶¶ 3, 5, 26, 228 P.3d at 901-02, 908. We relied on Smith v. Doe , 538 U.S. 84, 105-06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), in which-consistent with Noble -the Supreme Court found that Alaska's Sex Offender Registration Act was "nonpunitive" and instead a "civil regulatory scheme," making its retroactive application permissible. Henry , 224 Ariz. 164, ¶ 24, 228 P.3d at 907. As an intermediate appellate court, we are bound by both Smith and Noble . See id. ¶ 26 ; see also State v. Smyers , 207 Ariz. 314, n.4, 86 P.3d 370, 374, n. 4 (2004).
¶21 Indeed, Smith supports Noble 's reasoning even after the Arizona legislature removed the confidentiality provisions of sex-offender registration and required broad community notification. See Henry , 224 Ariz. 164, ¶ 25, 228 P.3d at 907-08. "The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but *386 a collateral consequence of a valid regulation." Smith , 538 U.S. at 99, 123 S.Ct. 1140. Notably, our legislature has taken steps to limit the broad community disclosure to "offenders deemed to pose a heightened risk to the community." Henry , 224 Ariz. 164, ¶ 23, 228 P.3d at 907.
¶22 Moreover, several other states have similarly determined that sex-offender registration is not a punishment. See, e.g. , People v. Mosley , 60 Cal.4th 1044, 185 Cal.Rptr.3d 251, 344 P.3d 788, 805 (2015) ("Because sex offender registration orders are not punishment in and of themselves, their imposition is not subject to Apprendi ."); Young v. State , 370 Md. 686, 806 A.2d 233, 250 (2002) ("[R]equiring petitioner to register as a sex offender ... does not constitute punishment, but is a remedial requirement for the protection of the public."); People v. Golba , 273 Mich.App. 603, 729 N.W.2d 916, 927 (2007) ("[Michigan's Sex Offenders Registration Act] is a remedial regulatory scheme furthering a legitimate state interest of protecting the public; it was not designed to punish sex offenders."); Commonwealth v. Kopicz , 840 A.2d 342, 348 (Pa. Super. Ct. 2003) ("Because the [Pennsylvania] Supreme Court found that the registration, notification and counseling provisions were nonpunitive, Appellant is not subject to 'enhanced punishment' by virtue of his adjudication as a sexually violent predator."). We find the reasoning of these other courts persuasive. See State v. Dean , 226 Ariz. 47, ¶ 19, 243 P.3d 1029, 1035 (App. 2010) (legal precedent from other jurisdictions informative); cf. State v. Nelson , 214 Ariz. 196, ¶ 11, 150 P.3d 769, 771 (App. 2007) (reviewing decisions from other jurisdictions and finding Alaska's treatment of issue persuasive).
¶23 In sum, Apprendi does not require a jury finding of the victim's age on a conviction for sexual abuse under § 13-1404(A) before the trial court can require a defendant to register as a sex offender under § 13-3821(A)(3). Instead, the court can make that determination and, assuming it finds the victim was under eighteen years old, must order the defendant to register. Accordingly, the court in this case did not err in requiring Trujillo to register as a sex offender. See Kuntz , 209 Ariz. 276, ¶ 5, 100 P.3d at 27 ; see also Benenati , 203 Ariz. 235, ¶ 7, 52 P.3d at 806-07.
¶24 Even assuming sex-offender registration was a penalty, Apprendi still would not apply to § 13-3821(A)(3) because, unlike the prison sentence in Apprendi and the fine in Southern Union Co. , sex-offender registration is not subject to a statutory maximum. See Apprendi , 530 U.S. at 490, 120 S.Ct. 2348. " Apprendi and its progeny require a jury to find any fact that either increases a sentence beyond the statutory maximum or increases a mandatory minimum sentence." State v. Leon , 240 Ariz. 492, ¶ 12, 381 P.3d 286, 289-90 (App. 2016) ; see also Alleyne v. United States , 570 U.S. 99, 103, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) (any fact that increases mandatory minimum must be submitted to jury). "[U]nder Arizona law, the statutory maximum sentence for Apprendi purposes in a case in which no aggravating factors have been proved to a jury beyond a reasonable doubt is the presumptive sentence established [by statute]." State v. Martinez , 210 Ariz. 578, ¶ 17, 115 P.3d 618, 622-23 (2005). Thus, we disagree with Trujillo that "the minimum mandatory [sentence] here [was] no registration" and instead agree with the state that "there is no prescribed statutory maximum or mandatory minimum in the context of sex offender registration." See generally § 13-3821(H) ("The court may order the suspension or termination of any duty to register under this section after a hearing...."). Accordingly, there was no Apprendi violation in this case. See Kuntz , 209 Ariz. 276, ¶ 5, 100 P.3d at 28 ; see also Benenati , 203 Ariz. 235, ¶ 7, 52 P.3d at 806-07.
¶25 Lastly, even were we to assume that it was error for the trial court rather than the jury to make the finding of the victim's age, we are satisfied beyond a reasonable doubt that any error would be harmless.[5] See *387 State v. Armstrong , 218 Ariz. 451, ¶ 20, 189 P.3d 378, 385 (2008) (harmless-error review places burden on state to prove beyond reasonable doubt that error did not contribute to or affect sentencing outcome); cf. State v. Ring , 204 Ariz. 534, ¶ 79, 65 P.3d 915, 941 (2003) ("In those instances in which no reasonable jury could find that the state failed to prove a pecuniary gain motive beyond a reasonable doubt, we will find harmless error affecting that factor."). M.A.C. testified that he was eighteen years old at the time of trial and fifteen years old when this incident occurred. Indeed, he explained that it happened the day before his sixteenth birthday. Trujillo did not challenge this testimony.[6] See State v. Prince , 206 Ariz. 24, ¶ 13, 75 P.3d 114, 118 (2003) (where evidence of age aggravator uncontroverted, error in not having jury make finding harmless). The state therefore presented overwhelming evidence that M.A.C. was under eighteen years of age at the time of the offense. See Ring , 204 Ariz. 534, ¶ 86, 65 P.3d at 942 (where jury failed to make finding, error harmless where overwhelming evidence establishes victim's age).
Preclusion of Evidence
¶26 Trujillo also contends the trial court erred in precluding testimony that his supervisor, who testified at trial for the state, "lost his job because he did not follow the rules." We review the exclusion of evidence for an abuse of discretion. State v. Davolt , 207 Ariz. 191, ¶ 66, 84 P.3d 456, 474 (2004) ; State v. Pina-Barajas , 244 Ariz. 106, ¶ 4, 418 P.3d 473, 475 (App. 2018).
¶27 On the first day of trial, the state sought to preclude Trujillo from presenting evidence that his supervisor had been terminated from Southwest Key "well after ... this incident occurred." The state explained that the supervisor "was not fired for reasons that have anything to do with dishonesty" but because "he signed off on a slip that allowed [someone] to drive a vehicle they weren't supposed to drive." The state argued this evidence was not relevant "for purposes of this particular trial." Trujillo responded that the evidence was relevant because the supervisor was going to testify about "policy and how policies are supposed to be followed at this place, and that maybe [Trujillo] didn't follow some of these policies when [the supervisor] himself was fired for not following policy." The trial court precluded the evidence, finding it was not relevant and its probative value did not outweigh the danger of unfair prejudice.
¶28 The next day, the supervisor testified about the rules concerning worker interaction with the children at Southwest Key. Specifically, he stated that workers are not supposed to enter the children's bedrooms unless accompanied by another worker. He also described the video surveillance showing that Trujillo had entered M.A.C.'s room alone three times the morning of the incident.
¶29 Later that day, after Trujillo had testified and the state indicated it wanted to recall the supervisor in rebuttal, Trujillo asked the trial court to reconsider its ruling. Trujillo pointed out he had testified "there were rules but the rules weren't always complied with" and the supervisor "clearly did not comply with those rules." Trujillo also argued that the supervisor's termination was relevant to his credibility-"he's being called to impeach [Trujillo's] credibility when his own ... should be at issue." In response, the state asserted that the supervisor's termination had "nothing to do with any kind of truthfulness issues" and pointed out that the termination was "over a year after this incident occurred." The court reaffirmed its prior ruling, explaining:
One, he didn't talk about any rules about driving. So it's not the very rules that he was talking about here. He was talking about the rules that involve the caretaker's interaction with the kids there. Those are the rules that he was talking about.
*388 Secondly, it is remote.
And third, it doesn't go to dishonesty. He ... wasn't ... terminated because he lied about something. He was terminated because he gave someone permission to drive a vehicle that he shouldn't have given.
So I don't see that it goes to his character for truthfulness.
¶30 Generally, all relevant evidence is admissible. Ariz. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Ariz. R. Evid. 401 ; see State v. Fulminante , 193 Ariz. 485, ¶ 56, 975 P.2d 75, 92 (1999). However, a trial court may preclude relevant evidence "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Ariz. R. Evid. 403 ; see State v. Connor , 215 Ariz. 553, ¶ 39, 161 P.3d 596, 607 (App. 2007) (trial court in best position to balance probative value of evidence against potential for unfair prejudice and therefore has broad discretion under Rule 403 ).
¶31 On appeal, Trujillo argues the evidence of his supervisor's termination was relevant because "[t]his is evidence that he did not understand the rules and the jury could question whether or not his testimony was accurate or credible on that point." He additionally contends, "The fact that [his] supervisor[ ] violated the rules is evidence that violating the rules was common and did not imply anything about [his] intention." Regarding whether the evidence would be unfairly prejudicial, Trujillo maintains "there is no reason to conclude that evidence that [the supervisor] did not follow the rules would lead the jury to convict [Trujillo] based on emotion."
¶32 The relevancy of this evidence is tenuous at best. See Ariz. R. Evid. 401 ; see also Fulminante , 193 Ariz. 485, ¶ 56, 975 P.2d at 92. As the state points out, the supervisor's "primary testimony concerned the rules that [workers] were tasked with following when engaging with children at Southwest Key." However, as the trial court observed, the supervisor was not terminated for violating those rules. Instead, he was fired for his failure to comply with a policy regarding who was permitted to drive the facility's vehicles-a policy completely unrelated to worker interaction with the children. We disagree with Trujillo that "[t]he fact that the rules fell in a different category ... does not diminish its relevance."
¶33 Even to the extent that the evidence was marginally relevant, see State v. Tucker , 215 Ariz. 298, ¶ 51, 160 P.3d 177, 192 (2007) (low threshold for relevance), we cannot say the trial court abused its discretion under Rule 403, see Connor , 215 Ariz. 553, ¶ 39, 161 P.3d at 607. As the court noted, Trujillo's supervisor was fired approximately fourteen months after this incident occurred. It was therefore remote in time, diminishing its probative value. See State v. Hardy , 230 Ariz. 281, ¶¶ 49-50, 283 P.3d 12, 22-23 (2012) ; see also State v. Fleming , 117 Ariz. 122, 125-26, 571 P.2d 268, 275-76 (1977) ("As evidence of the witness' condition becomes more remote in time, it has proportionately less bearing on the credibility of the witness."). Moreover, being fired for allowing an unauthorized person to drive a vehicle does not demonstrate a character trait for untruthfulness. See Ariz. R. Evid. 608(b) (on cross-examination, specific instances of conduct admissible if probative of character for truthfulness); see also State v. Zuck , 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982) ( Rule 403 helps protect against cross-examination that does little to impair credibility). Thus, such evidence "might have caused confusion and wasted time." State v. Payne , 233 Ariz. 484, ¶ 52, 314 P.3d 1239, 1258 (2013). Accordingly, we cannot say the court erred in precluding this evidence. See Davolt , 207 Ariz. 191, ¶ 66, 84 P.3d at 474 ; see also Pina-Barajas , 244 Ariz. 106, ¶ 4, 418 P.3d at 475.
Disposition
¶34 For the foregoing reasons, we affirm Trujillo's conviction, term of probation, and requirement for sex-offender registration.

The trial court granted Trujillo's motion for a delayed appeal pursuant to Rule 32.1(f), Ariz. R. Crim. P.

Kennedy v. Mendoza-Martinez , 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

Section 13-118(A) provides: "In each criminal case involving an offense other than a sexual offense, the prosecutor may file a special allegation of sexual motivation if sufficient admissible evidence exists that would justify a finding of sexual motivation by a reasonable and objective finder of fact."

Section 13-3821(C) gives the trial court discretion, notwithstanding the mandatory provision of subsection (A), to require a defendant to register as a sex offender "for any violation of chapter 14 or 35.1 of ... title [13] or for an offense for which there was a finding of sexual motivation pursuant to § 13-118."
Below, Trujillo argued-at least initially-that § 13-3821(C) did not apply here because "there was no [jury] finding of sexual motivation." However, on appeal, Trujillo recognizes that the trial court had discretion to impose registration under § 13-3821(C) because that subsection applies to the sexual offenses in chapter 14-including sexual abuse, which is at issue here-regardless of a finding of sexual motivation. But because the court relied on § 13-3821(A)(3) in requiring Trujillo to register, we focus our analysis on that subsection.

In his opening brief, Trujillo argued the state "invited the error" because he "attempted to get a jury determination of the victim's age but the court and state maintained that registration was not required." After oral argument, however, Trujillo seemed to abandon this argument. In any event, because the state is not urging error on appeal, the invited-error doctrine is inapplicable. See State v. Herrera , 232 Ariz. 536, ¶ 16, 307 P.3d 103, 111 (App. 2013).

When discussing voir dire, Trujillo agreed the trial court could inform the potential jurors that "[M.A.C.] was 16 years old" and that he "entered the United States as an unaccompanied minor." And although M.A.C.'s age became an issue as part of Trujillo's Apprendi argument after M.A.C. had testified, Trujillo did not then provide an affidavit or make an offer of proof that M.A.C.'s age was different than what he had testified to.