IN THE
# ARIZONA COURT OF APPEALS
## DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

STEPHEN VINCENT HAVERSTICK,
*Appellant*.

No. 2 CA-CR 2012-0392
Filed February 20, 2014

---

Appeal from the Superior Court in Pima County
No. CR20094604001
The Honorable Howard Fell, Judge Pro Tempore

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Amy M. Thorson, Assistant Attorney General, Tucson
*Counsel for Appellee*

Lori J. Lefferts, Pima County Public Defender
By Abigail Jensen, Assistant Public Defender, Tucson
*Counsel for Appellant*

---

**OPINION**

Chief Judge Howard authored the opinion of the Court, in which
Presiding Judge Vásquez and Judge Miller concurred.

H O W A R D, Chief Judge:

¶1        After a jury trial, appellant Stephen Haverstick was convicted of one count of sexual conduct with a minor and one count of molestation of a child. On appeal, he argues he was denied a fair trial because the prosecutor vouched for the credibility of a witness in closing argument. He further argues that assessments he was ordered to pay violate the ex post facto clauses of the state and federal constitutions and that the court erred by entering a criminal restitution order at sentencing. For the following reasons, we affirm Haverstick's convictions, sentences, and assessments, but vacate the criminal restitution order.

## Factual and Procedural Background

¶2        We view the facts in the light most favorable to upholding the convictions. *See State v. Mangum*, 214 Ariz. 165, ¶ 3, 150 P.3d 252, 253 (App. 2007). In 2009, S. revealed to a church youth group leader that she had been molested when she was younger. The youth group leader informed her pastor, who contacted the police. The police officers located S. and the Children's Advocacy Center conducted a forensic interview.

¶3        Haverstick was charged with one count of sexual conduct with a minor under fifteen alleging that he had oral sexual contact with S., a second count of sexual conduct with a minor under fifteen alleging that Haverstick had S. make oral sexual contact with him, and one count of molestation of a child alleging Haverstick had caused S. to have sexual contact with his genitals. At trial, S. testified that Haverstick had performed oral sex on her, that he had forced her to touch his genitals with her hand, and that he had forced her to perform oral sex on him.

¶4        The jury found Haverstick guilty on the counts alleging Haverstick had oral sexual contact with S. and that he had caused S. to have sexual contact with his genitals, but acquitted him on the count alleging he had caused S. to perform oral sex on him. He was sentenced to life imprisonment without possibility of release for thirty-five years for sexual conduct with a minor, consecutive to a

seventeen-year sentence for the molestation conviction.  We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1).

## Prosecutorial Misconduct

¶5        Haverstick first argues that the prosecutor committed misconduct that denied him a fair trial by vouching for S.'s credibility during his closing argument.  Because Haverstick did not object below to the statements he challenges on appeal, we review only for fundamental, prejudicial error.  *State v. Martinez*, 230 Ariz. 208, ¶ 31, 282 P.3d 409, 416 (2012).

¶6        In order to reverse a conviction based on improper comments from the prosecutor, the comments must "be so egregious as to deprive the defendant of a fair trial and render the resulting conviction a denial of due process."  *State v. Hernandez*, 170 Ariz. 301, 307, 823 P.2d 1309, 1315 (App. 1991).  Impermissible prosecutorial vouching takes two forms:  "(1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony."  *State v. Dumaine*, 162 Ariz. 392, 401, 783 P.2d 1184, 1193 (1989), *disapproved on other grounds State v. King*, 225 Ariz. 87, ¶¶ 9, 12, 235 P.3d 240, 242-43 (2010).  We consider arguments made in closing together with the jury instructions to determine "whether the prosecutor's statements constituted fundamental error."  *State v. Hernandez*, 170 Ariz. 301, 308, 823 P.2d 1309, 1316 (App. 1991).  "When improper vouching occurs, the trial court can cure the error by instructing the jury not to consider attorneys' arguments as evidence."  *State v. Payne*, 233 Ariz. 484, ¶ 109, 314 P.3d 1239, 1267 (2013).  And when the prosecutor makes "clear that it was for the jury to 'determine the credibility of' the witnesses," improper vouching does not occur so long as the prosecutor's "characterization of the witnesses as truthful was sufficiently linked to the evidence."  *State v. Corona*, 188 Ariz. 85, 91, 932 P.2d 1356, 1362 (App. 1997).

¶7        Before the attorneys presented their closing arguments, the trial court instructed the jury that "[i]n their opening statements and closing arguments, the lawyers talk to you about the law and

the evidence. What the lawyers say is not evidence, but it might help you to understand the law and the evidence." In his closing argument, the prosecutor reminded the jury that "the judge, as part of the instructions, gave you the way to judge a witness's credibility." He then went on to argue that all the other evidence presented at trial, including S.'s testimony, pointed to her credibility:

> Now, [S.] *is credible in every way possible.* The first thing is, every witness who came in here and talked, even in defendant's own statement, even Mr. Haverstick's own statement, he says [S.] is a truthful girl. Everyone has laid that fact out.
>
> . . . .
>
> The first way you judge the credibility of a witness is simply through someone's demeanor, someone's demeanor as they testify. And, ladies and gentlemen, you got a chance to sit feet away from [S.]. The first thing I want to ask you to do is take yourself back to that point yesterday. Think about the way she sat there and told you what had happened. Think about the way she sat there and told you about the feelings she still holds for her grandfather, the emotion she displayed with you guys. The simplest question is, was that faked.
>
> Now, you are the judges of the facts, not me. But the reality there, ladies and gentlemen, is *that was no act. That was not faked.* That was not overdone. There was no melodrama. There was no selling it to you. . . .
>
> If Mr. Haverstick is not guilty, [S.] would have had to get up there and basically lie to you guys. And we have to call it by its

name. Dr. Dutton, she used the term, a malicious false allegation. [S.] would come in here and sell you guys on something that wasn't true. Think back, please, to [S.] as she talked to you. Was that a girl selling you on something that wasn't true?

. . . .

Ladies and gentlemen, for Mr. Haverstick to not be guilty, *[S.] would have had to come to court and lie to you. That's not what happened.* She has no motive to do that. Her memory clearly does not show that. And most importantly, *her demeanor with you was not faked*. She talked about what was going on with her, about her own feelings.

Then, in rebuttal closing argument, the prosecutor continued discussing S.'s credibility by stating:

And, ladies and gentlemen, just because it's not the defense's burden, and it is not the defense's burden to disprove guilt, does not mean you ignore the simple fact that every single witness in this case told you [S.] is a truthful girl.

. . . .

. . . She is a real flesh-and-blood person who came and talked to you this week. . . . Your job is to assess her credibility as she sat here.

And when [defense counsel] says he doesn't have to prove stuff, that's right. But that doesn't mean you ignore that every factor that plays into her credibility

tells you, ladies and gentlemen, that she's telling the truth.

. . . .

Ladies and gentlemen, the defense doesn't have to give you an alternate scenario. They don't have to prove an alternate scenario. But the fact of the matter is, there is no alternate scenario. *That girl has credibility in every way somebody can*.

. . . .

. . . And please, at the end of the day, come back to really the person this is about, [S.]. The fact of the matter is, she was telling the truth or she wasn't.

Defense counsel talked about a lot of other witnesses, but very little about [S.] *The fact of the matter is, [S.] is credible in every single way somebody can be.* She has no motive to make this up. She said the same thing over and over again, even at the cost to herself, to her grandfather who[m] she loves, to her own family. Why? Real simple, ladies and gentlemen. Because it happened.

Haverstick argues that the italicized statements above constituted impermissible vouching by the prosecutor that placed the prestige of the government behind S. The comments, however, must be viewed in the context of the prosecutor's entire argument, during which he repeatedly told the jury it was their duty to determine S.'s credibility, not his, and urged them to find her credible by examining the evidence presented and reaching their own conclusion. Thus, we do not read the prosecutor's comments, in context, as impermissible vouching. *See Corona*, 188 Ariz. at 91, 932 P.2d at 1362.

¶8        Moreover, Haverstick has not shown that he was prejudiced by the comments.  The trial court instructed the jury that the lawyer's arguments were not evidence, and that instruction can be sufficient to "cure" improper vouching.  *See Payne*, 233 Ariz. 484, ¶ 109, 314 P.3d at 1267.    Furthermore, even assuming the prosecutor's remarks constituted improper vouching, any effect on the jury was mitigated by its receiving the requisite instruction.  Additionally, in a case that hinged on the credibility and testimony of S., the jury acquitted Haverstick of one charge of sexual conduct with a minor, apparently rejecting S.'s testimony as to that charge.  Thus, the record shows that the jury carefully deliberated over S.'s veracity and reached a conclusion independent of what the prosecutor argued.  Consequently, we are not persuaded by his argument.

**Assessments**

¶9        Haverstick next argues the trial court erred by ordering him to pay a $250 assessment to the "Sex Offender Monitoring Fund" pursuant to A.R.S. § 13-3821(Q) and a $500 assessment to the "Forensic Assessment Fund" pursuant to A.R.S. § 12-116.07, [1] because these laws became effective after he committed his crimes, and therefore the assessments violate the ex post facto clauses of the state and federal constitutions and A.R.S. § 1-246.  He did not object below, we therefore review only for fundamental, prejudicial error.  *State v. Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d 233, 236 (2009).  "An illegal sentence constitutes fundamental[, prejudicial] error."  *State v. Cox*, 201 Ariz. 464, ¶ 13, 37 P.3d 437, 441 (App. 2002).

¶10        Section 1-246 prohibits the application of an increased penalty to a defendant who committed a crime before the effective date of the increase.  Similarly, both the Arizona and federal constitutions prohibit ex post facto laws.  U.S. Const. art. I, § 10, cl. 1; Ariz. Const. art. II, § 25.  "Because the language of these provisions

---

[1] Although  Haverstick  originally  was  ordered  to  pay  the assessment pursuant to A.R.S. § 13-824, that section was renumbered as A.R.S. § 12-116.07 during the pendency of his appeal.  *See* 2012 Ariz. Legis. Serv. Ch. 96, § 6.

is materially the same, we generally interpret them as having the same scope, and we typically follow federal precedent in the area." *State v. Henry*, 224 Ariz. 164, ¶ 6, 228 P.3d 900, 902-03 (App. 2010). For purposes of this case, a law violates the ex post facto clauses of the state or federal constitutions if it "'changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.'" *State v. Noble*, 171 Ariz. 171, 174, 829 P.2d 1217, 1220 (1992), *quoting Calder v. Bull*, 3 U.S. 386, 390 (1798). Laws that inflict further punishment cannot be applied retroactively without violating the ex post facto clauses, but a law that is only regulatory in nature "will withstand an ex post facto challenge." *Henry*, 224 Ariz. 164, ¶ 8, 228 P.3d at 903.

**¶11** When evaluating whether to characterize a law as punitive or "a regulatory scheme that is civil and nonpunitive," we look first to the legislature's intent. *See Smith v. Doe*, 538 U.S. 84, 92 (2003); *Noble*, 171 Ariz. at 175, 829 P.2d at 1221; *Ariz. Dep't of Pub. Safety v. Superior Court (Falcone)*, 190 Ariz. 490, 494, 949 P.2d 983, 987 (App. 1997). If the legislature has indicated a nonpunitive purpose, we then determine "'whether the statutory scheme [i]s so punitive either in purpose or effect as to negate that intention.'" *Noble*, 171 Ariz. at 175, 829 P.2d at 1221, *quoting United States v. Ward*, 448 U.S. 242, 248-49 (1980); *accord Smith*, 538 U.S. at 92; *Falcone*, 190 Ariz. at 495, 949 P.2d at 988. But in our review, the person challenging a law on ex post facto grounds bears the burden of demonstrating by "'the clearest proof'" that the law is in fact punitive, otherwise we will not "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith*, 538 U.S. at 92, *quoting Hudson v. United States*, 522 U.S. 93, 100 (1997); *accord Falcone*, 190 Ariz. at 496, 949 P.2d at 989.

**¶12** In *Henry*, we examined whether § 13-3821 was a regulatory or punitive statute. 224 Ariz. 164, ¶¶ 8, 10-26, 228 P.3d at 903-08. Although we did not specifically consider the $250 assessment imposed by subsection (Q), we looked to the statute as a whole in weighing the intent of the legislature and the effects of the statute and concluded that it was "a nonpunitive civil regulation for purposes of the Ex Post Facto Clause." *Id.* ¶¶ 10-15, 17, 22-24, 26. Haverstick does not address *Henry* in his brief, and therefore has not

shown its analysis would not also cover the assessment. Furthermore, we find no reason that *Henry*'s analysis would not apply. Accordingly, we reject his argument that § 13-3821(Q) violates the ex post facto clauses of the state or federal constitutions, or § 1-246.

¶13 Haverstick also argues that the $500 assessment he was ordered to pay pursuant to § 12-116.07 violates the ex post facto clauses of the state and federal constitutions and § 1-246. Whether imposing the assessments required by this section on offenders whose crimes predate the enactment of the law violates the ex post facto clauses of the state and federal constitutions is a matter of first impression.

¶14 Section 12-116.07 requires the trial court to order persons "convicted of . . . a dangerous crime against children as defined in § 13-705 . . . to pay an assessment of five hundred dollars" and explains that the assessment is "for the purpose of defraying the cost of investigations pursuant to § 13-1414[, A.R.S.]" That section requires the county to pay for the cost of any "medical or forensic interview . . . arising out of the need to secure evidence that a person has been the victim of a dangerous crime against children." Thus, the plain language of the statute expresses its purpose not to punish offenders but to help ensure that the agencies responsible for investigating sex crimes against children have the funds to secure crucial evidence.

¶15 Because the legislature has indicated a nonpunitive purpose for the forensic assessment, we consider whether the law's punitive effects outweigh its regulatory purpose. *Henry*, 224 Ariz. 164, ¶ 18, 228 P.3d at 905-06. In so doing, we consider all relevant factors, *Smith*, 538 U.S. at 97, but particularly those enumerated in *Kennedy v. Mendoza-Martinez*:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims

of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

372 U.S. 144, 168-69 (1963) (footnotes omitted). Bearing these factors in mind, we assess "the effects of the [assessment] requirement on convicted sex offenders and . . . the rationality between the requirement and its purported non-punitive function." *Noble*, 171 Ariz. at 175, 829 P.2d at 1221.

¶16      First, the money assessment at issue here places no affirmative disability or restraint on Haverstick, terms which have been traditionally associated with imprisonment. *See Smith*, 538 U.S. at 100. Second, "money penalties . . . ha[ve not] historically been viewed as punishment. . . . '[T]he payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789.'" *Hudson*, 522 U.S. at 104 (citation omitted), *quoting Helvering v. Mitchell*, 303 U.S. 391, 400 (1938) (third and fourth alterations in *Hudson*).

¶17      Third, the sanction here does not require a finding of scienter. Rather, § 12-116.07 requires the assessment against any person convicted of a dangerous crime against children, without regard to the offender's state of mind. Fourth, the conduct for which the sanction is imposed is also criminal, but "[t]his fact is insufficient to render the money penalties . . . criminally punitive." *Hudson*, 522 U.S. at 105, *citing United States v. Ursery*, 518 U.S. 267, 292 (1996).

¶18      Fifth, and as discussed preliminarily above, the primary purpose of the statute is neither retributive nor deterrent, but remedial: its goal is to help fund past and future forensic examinations of victims, which local governments are required to pay for, and in so doing, to protect the community. Although the assessment may have a minimal deterrent effect, its operative effect is to fund the state's remedial interest in recouping expenses.

Although this interest is "consistent with the purposes of the [Arizona] criminal justice system, the State's pursuit of it in a regulatory scheme does not make the objective punitive." *Smith*, 538 U.S. at 94.

**¶19** Finally, it does not appear on the face of the statute that the $500 assessment is excessive in relation to its stated purpose. A professional medical examination of a victim done by an expert in preserving evidence is neither quick nor inexpensive. *See* Rose Corrigan, *The New Trial by Ordeal: Rape Kits, Police Practices, and the Unintended Effects of Policy Innovation*, 38 Law & Soc. Inquiry 920, 936-37 (2013) (discussing the economic incentives involved when police departments decide whether to investigate sexual assault). By securing funds specifically for the examinations, the statute encourages law enforcement to investigate reports of sex crimes against children despite the high cost to its budget.

**¶20** In sum, Haverstick has not shown the "clearest proof" required by *Smith* that the monetary sanction imposed by § 12-116.07 is punitive in its effects. 538 U.S. at 92. We therefore reject his argument that the statute violates § 1-246 or the ex post facto clauses of the state or federal constitutions.

### Criminal Restitution Order

**¶21** Haverstick finally argues, and the state concedes, that the trial court erroneously entered a criminal restitution order ("CRO"). The court here, in its sentencing minute entry, provided that "all fines, fees and/or assessments" the court had imposed were "reduced to a Criminal Restitution Order, with no interest, penalties or collection fees to accrue while the defendant is in the Department of Corrections." As this court has determined, based on A.R.S. § 13-805(C), "the imposition of a CRO before the defendant's probation or sentence has expired 'constitutes an illegal sentence, which is necessarily fundamental, reversible error.'"[2] *State v. Lopez*, 231 Ariz.

---

[2] A.R.S. § 13-805 has been amended since the date of the offense. See 2012 Ariz. Sess. Laws, ch. 269, § 1. The changes may now permit entry of a CRO at sentencing under some circumstances but are not material here.

561, ¶ 2, 298 P.3d 909, 910 (App. 2013), *quoting State v. Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d 784, 789 (App. 2009). Therefore, because this portion of the sentencing minute entry is not authorized by statute, the CRO must be vacated.

## Disposition

¶22        For the foregoing reasons, we vacate the CRO but otherwise affirm Haverstick's convictions, sentences, and assessments.