NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DOUGLAS CRISWELL, *Appellant.*

No. 1 CA-CR 14-0228
FILED 6-4-2015

Appeal from the Superior Court in Maricopa County
No. CR2013-108449-002
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Margaret M. Green
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Kent E. Cattani joined.

**N O R R I S**, Judge:

¶1        Douglas Criswell appeals his conviction and sentence for burglary in the second degree, arguing the State committed prosecutorial misconduct by vouching and shifting the burden of proof in closing argument. Because Criswell did not object to either of these alleged improprieties at trial, we review for fundamental error, *see State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005), and find none. We thus affirm his conviction and sentence.

I.      The Prosecutor Did Not Act Improperly by Vouching

¶2        Criswell argues the prosecutor committed prosecutorial misconduct by placing the prestige of the government behind its witness, C.R., when, in closing argument, she referred to testimony from a detective who had interviewed C.R. *See State v. Vincent*, 159 Ariz. 418, 423, 768 P.2d 150, 155 (1989) (impermissible prosecutorial vouching occurs "where the prosecutor places the prestige of the government behind its witness"). We disagree.

¶3        In the interview, C.R. told the detective he and Criswell had committed the burglary. At trial, C.R. testified he did not remember what he said during the interview or whether Criswell was involved in the burglary. After the State played portions of a video recording of the interview outside the presence of the jury in an unsuccessful attempt to refresh C.R.'s recollection, the superior court allowed the State to play a redacted version of the recording for the jury. Afterward, C.R. refused to answer either parties' questions.[1]

¶4        Subsequently, in the State's case-in-chief, the detective testified he thought C.R. had been truthful during the interview:

---

[1]Criswell does not argue on appeal that he was deprived of a meaningful opportunity to cross-examine C.R.

Prosecutor:  Okay.  Would you say that [C.R.] was cooperative [during the interview]?

Detective:  I would say, I would say that he initially was misleading with some answers and some questions.  And that I could I will [sic] a basis that I felt like he was being more truthful towards the end of the interview.

. . . .

Prosecutor: Okay.  And at some point so is it your testimony that at some point after the interview went on for a while he became more cooperative.

Detective: Yes.

Prosecutor: Were his answers as the interview went on in your[—]based on your experience in interviewing people, did it seem to you that his answers became more truthful toward the end of the interview?

Detective:  They did.

¶5        On cross-examination the detective affirmed this belief:

Defense counsel: Did you think that [C.R.] was truthful in his statement that he made to you?

Detective: Towards the end of the interview, I believe he was being truthful.

¶6        Criswell's counsel attacked C.R.'s credibility in closing argument.  In rebuttal, the prosecutor countered:

The detective told you when he testified, he believed that when [C.R.] was talking to him initially, he was a little bit hesitant, he was trying to minimize his involvement in this case.  But he felt like as time went on that [C.R.] was giving him honest answers.

3

You get to decide what you think about that. But based on the fact that what he says matches what the detectives or what the officers saw, what the victims saw, what the 911 caller saw, his testimony is more credible than they will have you believe.

¶7        "[W]hen the prosecutor makes clear that it was for the jury to determine the credibility of the witnesses, improper vouching does not occur so long as the prosecutor's characterization of the witnesses as truthful was sufficiently linked to the evidence." *State v. Haverstick*, 234 Ariz. 161, 164, ¶ 6, 318 P.3d 877, 880 (App. 2014) (quoting *State v. Corona*, 188 Ariz. 85, 91, 932 P.2d 1356, 1362 (App. 1997) (internal quotation marks omitted).  Here, the prosecutor did no more than point to evidence that supported C.R.'s credibility, and she explicitly reminded the jury that it "get[s] to decide what [to] think about" the detective's testimony.  *See Corona*, 188 Ariz. at 91, 932 P.2d at 1362 (prosecutor did not improperly vouch when she "made clear that it was for the jury to determine the credibility of the witnesses and her characterization of the witnesses as truthful was sufficiently linked to the evidence" (internal quotation marks omitted)).

¶8        Furthermore, our supreme court has instructed we are to presume jurors follow the superior court's instructions.  *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68, 132 P.3d 833, 847 (2006).  Thus, we must assume the jury followed the superior court's instruction that "[w]hat the lawyers sa[y]" in opening and closing arguments "is not evidence."  *See State v. Payne*, 233 Ariz. 484, 512, ¶ 109, 314 P.3d 1239, 1267 (2013) ("When improper vouching occurs, the trial court can cure the error by instructing the jury not to consider attorneys' arguments as evidence."); *Haverstick*, 234 Ariz. at 166, ¶ 8, 318 P.3d at 882 (any effect of improper vouching was mitigated by superior court's instruction that attorney's comments are not evidence).

II.    The State Did Not Improperly Shift the Burden of Proof

¶9        Criswell also argues the State improperly shifted the burden of proof by pointing out in its closing argument that he did not call any witnesses to corroborate his testimony.  We disagree.

¶10        Criswell testified at trial that the reason the police found him in possession of various consumer electronics and personal items in a park near the burglarized apartment was because he, his brother, and a roommate had just been evicted from their apartment, and the items were

his. Criswell also denied he gave any property to V.M., the person who pawned the stolen property.

¶11 In closing argument, the prosecutor pointed out that Criswell did not call any witnesses to corroborate this testimony:

> And what doesn't make sense, is the defendant's story. His story about how he got evicted, about how his brother helped him to move all the stuff, how his brother's friends watched, he's got an answer for everything but nothing to back it up. Because you can bet the farm that if his brother or brother's roommate were going to help him, we're going to verify that story, they had issued a subpoena and they will have testified, you would have heard from them.
>
> But they didn't come here. And there is a reason for that. And they know what that reason is, and so do you, because they have got nothing to back up the story.

¶12 In rebuttal, the prosecutor again picked up this theme:

> If [V.M.] will [sic] have been helpful to the case, they would have brought him in. The same things with who he says brother is a got evicted and his [roommate]. [sic]
>
> . . . .
>
> [T]here is no brother here testifying to help. No [roommate] here testifying to help his story to back it up, there is none of that because if they were going to help, you that [sic] make sure they were here. But you didn't get to hear from them.

¶13 Although Criswell acknowledges that "[g]enerally, a prosecutor may comment upon a defendant's failure to produce material witnesses who would substantiate his defense," he nevertheless argues that because his roommate, his brother, and V.M. were equally available as witnesses to both sides, the State committed misconduct by drawing an

5

inference unfavorable to Criswell from their absence. *See State v. Condry*, 114 Ariz. 499, 500, 562 P.2d 379, 380 (1977).

**¶14**      The record, however, does not show these witnesses were "legally and practically" available to both parties. *See id.*; *State v. Young*, 109 Ariz. 221, 225, 508 P.2d 51, 55 (1973). In determining "whether [a] comment regarding an uncalled witness [was] proper," the superior court may consider "whether the witness was under the control of the party who failed to call him or her"; "whether the party failed to call a seemingly available witness whose testimony it would naturally be expected to produce if it were favorable"; and "whether the existence or nonexistence of a certain fact is uniquely within the knowledge of the witness." *Gordon v. Liguori*, 182 Ariz. 232, 236, 895 P.2d 523, 527 (App. 1995) (citations omitted); *accord Kean v. C.I.R.*, 469 F.2d 1183, 1188 (9th Cir. 1972) ("The determination of the question of equal availability depends upon all the facts and circumstances bearing upon the witness's relation to the parties and not merely upon his physical presence at trial or accessibility for service of a subpoena.") *cited in Ponce v. Indus. Comm'n*, 120 Ariz. 134, 136, 584 P.2d 598, 600 (App. 1978). Here, because Criswell did not object to the prosecutor's argument, we have no record on which to make the fact-intensive inquiry into the availability of Criswell's brother, his roommate, and V.M.

**¶15**      Accordingly, Criswell has failed to "prove error," and, therefore, show he is entitled to relief. *See Henderson*, 210 Ariz. at 568, ¶ 23, 115 P.3d at 608 ("To obtain relief under the fundamental error standard of review, [defendant] must first prove error.").

**CONCLUSION**

**¶16**      For the foregoing reasons, we affirm Criswell's conviction and sentence.

