NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA , *Appellee,*

*v.*

RUFUS YOUTY GARWO, *Appellant.*

No. 1 CA-CR 15-0577
FILED 9-13-2016

Appeal from the Superior Court in Maricopa County
No. CR2014-000192-001
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Jon W. Thompson and Chief Judge Michael J. Brown joined.

J O H N S E N, Judge:

**¶1**      Rufus Youty Garwo appeals his convictions of aggravated driving under the influence of intoxicating liquor ("DUI") while his license was suspended and aggravated DUI with a blood alcohol concentration ("BAC") of .08 or higher, each a Class 4 felony. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**      On the night of his arrest, Garwo attended a party at a Mesa park.[1] At some point after the party, Garwo drove to his girlfriend's apartment complex. As Garwo attempted to park his vehicle, he collided with a parked vehicle and a pole. The owner of the parked vehicle saw the collision and, after a brief encounter with Garwo, called the police. After Garwo performed field sobriety tests, he was arrested and police performed a blood draw. Garwo concedes he was drunk at the time of his arrest.

**¶3**      The jury convicted Garwo of the charged offenses, and the court sentenced him to a total of four months' incarceration. Garwo filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1) (2016), 13-4031 (2016) and -4033(A)(1) (2016).[2]

## DISCUSSION

**¶4**      Garwo argues the prosecutor committed misconduct when she asked Garwo whether police officers lied when they testified about what Garwo told them the night of his arrest. Garwo also argues the prosecutor then compounded that error during closing argument. Because Garwo failed to raise these objections at trial, we review for fundamental

---

[1]    We view the trial evidence in the light most favorable to sustaining the jury's verdicts. *State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

[2]    Absent material revision after the date of an alleged offense, we cite a statute's current version.

error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). To prevail, Garwo must prove both fundamental error and resulting prejudice. *See id.* at ¶ 20.

**¶5**        In general, parties should refrain from questioning a witness about whether another witness lied. *State v. Morales*, 198 Ariz. 372, 375, ¶ 13 (App. 2000). "Were they lying" questions may be allowed, however, "when the only possible explanation for the inconsistent testimony is deceit or lying or when a defendant has opened the door by testifying about the veracity of other witnesses on direct examination." *Id.* "In determining whether a prosecutor's improper statement constitutes fundamental error, we examine, under the circumstances, whether the jurors were probably influenced and whether the statement probably denied Defendant a fair trial." *State v. Bible*, 175 Ariz. 549, 601 (1993).

**¶6**        During the State's case-in-chief, a police officer testified that a clear red cup of "dark liquid" was found inside Garwo's vehicle. A second police officer recounted that Garwo told the officers he (1) had consumed alcohol (beer) over the span of three hours before the collision at the Mesa party, (2) was a "three" on a drunkenness scale from zero to ten ("zero being completely sober and ten being falling down drunk") at the time of the collision, and (3) had not consumed any alcohol after the collision. On direct examination, Garwo denied he told police he drank at the party in Mesa, denied he told police he had not consumed alcohol after the collision, and denied the existence of an open container of alcohol in his vehicle at the time of the collision:

> Q. Okay. Did you ever tell the police that you drank two beers at a party in Mesa?
>
> A. There was no beer in the party. I don't know where they got those stories from.
>
> \*        \*        \*
>
> Q. Did you ever tell the police that you drank at the park in Mesa?
>
> A. No.
>
> Q. Did you ever tell the police that you drank at a party in Mesa?
>
> A. No.

\*        \*        \*

Q.  Did you tell Officer [] you did not drink any alcohol after this collision?

A.  I never did.

\*        \*        \*

Q.  There was testimony that a cup was found in your Ford Fusion? . . .  Do you recall that?

A.  That's what they said.

Q.  Okay.  Do you recall any open containers of alcohol being in the vehicle?

A.  Not that I recall.

Subsequently, while cross-examining Garwo, the prosecutor asked, without objection, whether the police officers were lying:

Q.  So Officer [] lied when he said that you told him [you did not have anything else to drink after the collision]?

A.  Exactly.

\*        \*        \*

Q.  And you never told them that you had alcohol, specifically beer, two of them, whatever you said, before you drove your car?

A.  No.

Q.  So that part is a lie, too?

A.  Yeah.

\*        \*        \*

Q.  And you told the officers when they asked you to rate yourself on a scale from 0 to 10, 0 being completely sober, 10 being drop dead drunk, that at the time of driving you rated yourself a three.

A.  That's what he said, I did.

\*       \*       \*

Q.  So he made that part up, too?

A.  (Nods head.)

¶7          The prosecutor's questions did not constitute misconduct, much less fundamental error that deprived Garwo of a fair trial. The prosecutor asked Garwo whether the officers were lying only after Garwo questioned the veracity of the officer's testimony on direct examination, opening the door to the prosecutor's questions. *Morales*, 198 Ariz. at 375, ¶ 13. *See generally State v. Doerr*, 193 Ariz. 56, 63, ¶ 27 (1998) ("When a party elicits evidence or comments that make otherwise irrelevant evidence highly relevant or require some response or rebuttal," the door is opened to pertinent, generally impermissible evidence.).[3]          Accordingly, the prosecutor did not commit misconduct by asking Garwo whether the police officers were lying. *Morales*, 198 Ariz. at 375, ¶ 13; *see People v. Overlee*, 236 A.D.2d 133, 137-38 (N.Y. App. Div. 1997).

¶8          Garwo argues the prosecutor also distorted the State's burden of proof during closing argument by asking the jury to consider whether the police officers had any motive to lie.[4]  In support, Garwo cites *United States v. Richter*, 826 F.2d 206 (2d Cir. 1987).  In that case, however, the prosecutor not only repeatedly asserted that the jury could acquit the defendant only if it found FBI agents committed perjury "over and over again, in this courtroom," the prosecutor also misquoted evidence in an effort to frame the controversy as between the defendant and the FBI agents. *Richter*, 826 F.2d at 208-09.  Here, the prosecutor's statement, read in the proper context, simply emphasized the jury's duty to determine witness credibility and outlined relevant factors bearing on that determination.  Further, the superior court instructed the jurors before and

---

[3]      Garwo asks this court to reconsider *Morales*, but we decline to do so.

[4]      The prosecutor said:

> [A]ll different types of witnesses . . . are all judged the same. So when the officers take the stand, you get to judge them the same way.  What bias do they have? What motive do they have for them to lie now when they say that he said he was drinking before?  You get to decide that.

after the presentation of evidence that the State had the burden of proving the defendant guilty beyond a reasonable doubt and defined that burden for the jury. Under the circumstances, the prosecutor's statement did not distort the State's burden of proof and did not constitute misconduct. *See State v. Haverstick*, 234 Ariz. 161, 164, ¶ 6 (App. 2014) ("We consider arguments made in closing together with the jury instructions to determine whether the prosecutor's statements constituted fundamental error.").

## CONCLUSION

¶9 For the foregoing reasons, we affirm Garwo's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA