NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

OSCAR CABRERA-ORTEGA, *Appellant.*

No. 1 CA-CR 21-0549
FILED 9-27-2022

---

Appeal from the Superior Court in Maricopa County
No. CR2020-001722-001
The Honorable Roy C. Whitehead, Judge

**VACATED IN PART AND AFFIRMED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Tucson
By Diane L. Hunt
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas K. Baird
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge D. Steven Williams joined.

**H O W E**, Judge:

**¶1**        Oscar Cabrera-Ortega appeals the financial assessments in his sentencing order. For the following reasons, we vacate in part and affirm in part.

## FACTS AND PROCEDURAL HISTORY

**¶2**        In May 2020, Cabrera-Ortega was indicted on three counts of sexual assault and three counts of kidnapping, class 2 felonies committed in July 2002 and in April and May 2006. Following a jury trial, the jury convicted Cabrera-Ortega on all six counts. On the three counts of sexual assault, he was sentenced to consecutive terms of imprisonment totaling 28 years. On the three counts of kidnapping, the trial court suspended the imposition of sentence and imposed concurrent five-year terms of supervised probation upon his release. The court ordered him to pay financial assessments for one count of the sexual assault convictions: a $20 time-payment fee, $20 probation assessment, $250 sex offender registration fee, $13 criminal penalty assessment, $50 address confidentiality program assessment, and $500 dangerous crimes against children ("DCAC") or sexual assault assessment. The court also ordered him to pay financial assessments for one probation count: a $65 monthly probation fee, $20 probation assessment, $20 time-payment fee, $13 criminal penalty assessment, and $2 victim rights enforcement assessment. Neither party objected to these amounts at sentencing. Cabrera-Ortega timely appeals.

## DISCUSSION

**¶3**        Cabrera-Ortega argues that his sentence was illegal because the court ordered him to pay assessments in violation of ex post facto principles.[1] Namely, he appeals from the criminal penalty assessment,

---

[1]        While Cabrera-Ortega identifies the issues in his opening brief, he does not support his arguments until the reply brief. In our discretion we

address confidentiality program assessment, sex offender registration fee, DCAC or sexual assault assessment, and time-payment fee. Because Cabrera-Ortega did not object to this issue at sentencing, we review for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018); *State v. McDonagh*, 232 Ariz. 247, 248 ¶ 7 (App. 2013). But "[w]e review de novo issues concerning the meaning and scope of statutes, attempting to discern and fulfill legislative intent." *State v. Payne*, 223 Ariz. 555, 561 ¶ 16 (App. 2009).

¶4          The State properly concedes that the statutes authorizing the financial assessments in this appeal became effective after the dates of the offenses alleged in the indictment. *See* A.R.S. §§ 12–116.04, –116.05, –116.07; A.R.S. § 13–3821(Q). Ex post facto laws punish acts not punishable at the time they were committed or impose more punishment than prescribed at the time offenders committed the offense. *State v. Weinbrenner*, 164 Ariz. 592, 593 (App. 1990). The Arizona Constitution prohibits the enactment of such laws, Ariz. Const. art. II, § 25, "to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Weinbrenner*, 164 Ariz. at 593 (quoting *Beazell v. Ohio*, 269 U.S. 167, 171 (1925)). Newly enacted laws that change defendants' procedural rights are not ex post facto. *State v. Beltran*, 170 Ariz. 406, 408 (App. 1992). Procedural or regulatory laws may be applied retroactively, whereas punitive laws may not. *State v. Henry*, 224 Ariz. 164, 167 ¶ 8 (App. 2010). "[T]he person challenging a law on ex post facto grounds bears the burden of demonstrating by 'the clearest proof' that the law is in fact punitive." *State v. Haverstick*, 234 Ariz. 161, 167 ¶ 11 (App. 2014) (internal quotation marks omitted); *Henry*, 224 Ariz. at 167 ¶ 9.

I.          **Criminal Penalty Assessments**

¶5          The court erred in imposing the criminal penalty assessments. The State concedes that the $13 criminal penalty assessment constitutes a fine or penalty that violates ex post facto laws and should be vacated. Its concession was proper. Arizona Revised Statutes § 12–116.04 provides that "a *penalty* assessment shall be levied in an amount of thirteen dollars on every fine, penalty and forfeiture imposed and collected by the courts for criminal offenses . . . ." (emphasis added). "The term 'penalty' in its broadest sense includes fines as well as other kinds of punishment." *State*

_____

consider the merits of the appeal. *See State v. Shipman*, 208 Ariz. 474, 474 ¶ 4 n.2 (App. 2004) (stating that the court may disregard arguments raised for the first time in the reply brief).

*v. Sheaves*, 155 Ariz. 538, 541 (App. 1987) (finding that a fine is a criminal penalty). Because a "criminal penalty" implicates punishment, the criminal penalty assessment is punitive in nature and thus violates ex post facto principles. *See id.* (finding that a "felony penalty assessment" is punitive because the assessment is "exacted from each individual defendant for each felony of which he or she is convicted"); *Beltran*, 170 Ariz. at 408 (holding that statute increasing surcharge of penalty assessment from 37% at the time the offense was committed to 40% was substantive in nature and imposed additional punishment). Because of the criminal penalty assessment's punitive nature, its imposition here violates ex post facto principles. We therefore vacate the imposition of this assessment for both the sexual abuse and kidnapping counts.

## II.        Address Confidentiality Program Assessment

**¶6**        The court did not err in imposing the address confidentiality program assessment. To characterize the assessment as regulatory or punitive, courts look first to the legislature's intent. *State v. Trujillo*, 248 Ariz. 473, 477 ¶ 20 (2020); *Haverstick*, 234 Ariz. at 166 ¶ 11. "If the legislature has indicated a nonpunitive purpose, we then determine whether the statutory scheme is so punitive either in purpose or effect as to negate that intention." *Haverstick*, 234 Ariz. at 166 ¶ 11 (internal quotation marks omitted). The address confidentiality program assessment is levied pursuant to A.R.S. § 12–116.05, which provides that "a person who is convicted of an offense included in title 13, chapter 14 . . . shall pay an assessment of fifty dollars." The statute's purpose is not to punish offenders but to fund the address confidentiality program, *id.*; A.R.S. § 41–169(A), which helps victims of "domestic violence offenses, sexual offenses or stalking to keep their residence confidential and not accessible to the general public," A.R.S. § 41–162(A). The legislature has thus indicated a nonpunitive purpose in the statute's plain language. To determine whether the law's punitive effects outweigh its regulatory purpose, we consider the enumerated factors in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), as this court applied in *Haverstick*, 234 Ariz. at 167 ¶ 15:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is

assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

¶7 First, the address confidentiality program statute places neither an "affirmative disability" nor a "restraint" on Cabrera-Ortega's activities. *See Haverstick*, 234 Ariz. at 167 ¶ 16; *see also Smith v. Doe*, 538 U.S. 84, 100 (2003). Second, although assessments related to the address confidentiality program have not come under scrutiny in Arizona, money penalties themselves historically have not been viewed as punishment but as a sanction in civil proceedings. *See Haverstick*, 234 Ariz. at 167 ¶ 16. Third, the assessment does not require a finding of scienter; the legislature requires the assessment without regard to Cabrera-Ortega's state of mind. *See id.* at ¶ 17. Fourth, the address confidentiality statutes do not have an inherently deterrent effect; the primary purpose is remedial: the program protects victim address confidentiality, A.R.S. § 41–162(A), and the assessment helps fund this program, A.R.S. § 12–116.05(B). Even if it did have a deterrent effect, it would be minimal and "does not, by itself, transform the assessment into a criminal penalty." *See Trujillo*, 248 Ariz. at 482 ¶ 52. Fifth, the underlying offense is criminal, but "[t]his fact is insufficient to render the money penalties . . . criminally punitive." *Haverstick*, 234 Ariz. at 168 ¶ 17 (quoting *Hudson v. United States*, 522 U.S. 93, 105 (1997)). Sixth, the assessment is rationally connected to the nonpunitive purpose of protecting victim address confidentiality. A.R.S. § 41–161(2); *see Martin v. Reinstein*, 195 Ariz. 293, 316 ¶ 74 (App. 1999) ("[P]rotecting the public from sex offenders is a paramount governmental interest."). Lastly, the $50 assessment is not excessive "on the fact of the statute," but reasonable in relation to this purpose. *See Haverstick*, 234 Ariz. at 168 ¶ 19 (finding the $500 DCAC and sexual assault assessment not excessive in relation to the purpose of funding past and future examinations of victims).

¶8 Even if the statute has punitive effects, they do not outweigh the nonpunitive effects. Cabrera-Ortega argues that for each assessment, this court should apply the factors set forth in *McDonagh* and *Payne*, which provide that an "assessment" is a "sentence" if (1) "it is a pecuniary punishment imposed by a lawful tribunal upon a person convicted of a crime[,] (2) the money recovered goes to the people of Arizona[,] and (3) the money is not a civil penalty or restitution to a crime victim." *McDonagh*, 232 Ariz. at 249 ¶ 10 (internal quotation marks omitted). But these cases do not apply here because whether an imposed financial assessment violates ex post facto depends on whether the assessments are punitive or nonpunitive, not on whether they are sentences. *See id.* at ¶ 11 (holding that the assessments are illegal sentences); *Payne*, 223 Ariz. at 569 ¶ 49 (holding

same). The assessment levied under A.R.S. § 12–116.05 is nonpunitive and does not violate ex post facto principles.

## III.        Sex Offender Registration Fee

**¶9**        The court did not err in imposing the sex offender registration fee. The sex offender registration fee is levied pursuant to A.R.S. § 13–3821(Q), which provides that "[o]n conviction of or adjudication of guilty except insane for any offense for which a person is required to register pursuant to this section, in addition to any other penalty prescribed by law, the court shall order the person to pay an additional assessment of $250." Although this particular provision has not been explicitly considered on its own, "the structure of the [sex offender] registration scheme is regulatory, not punitive." *Trujillo*, 248 Ariz. at 479 ¶ 30 (applying the *Kennedy* factors to the sex offender registration scheme indicates its regulatory nature); *Henry*, 224 Ariz. at 172 ¶ 26 (holding that sex offender registration scheme did not violate ex post facto principles). After all, the legislative purpose of the statute is to provide sex offender information to the public, *Henry*, 224 Ariz. at 169 ¶ 17, much of which is already public, *Trujillo*, 248 Ariz. at 480 ¶ 38. Cabrera-Ortega did not address the aforementioned cases in his brief and has not shown that the analyses would not cover the assessment. Therefore, this fee does not violate ex post facto principles.

## IV.        DCAC or Sexual Assault Assessment

**¶10**        The court did not err in imposing the DCAC or sexual assault assessment. The $500 DCAC or sexual assault assessment is levied pursuant to A.R.S. § 12–116.07, which provides that a person convicted of a DCAC under A.R.S. § 13–705 or sexual assault must be ordered "to pay an assessment of five hundred dollars." The collected assessment "defray[s] the cost of investigations pursuant to [A.R.S.] § 13–1414." A.R.S. § 12–116.07(B). The statute's purpose is "not to punish offenders but to help ensure that the agencies responsible for investigating sex crimes against children have the funds to secure crucial evidence." *Haverstick*, 234 Ariz. at 167 ¶ 14 (applying the *Kennedy* factors to the DCAC or sexual assault assessment indicates its nonpunitive nature). Cabrera-Ortega did not address in his brief whether the *Haverstick* analysis would not cover the assessment here. Thus, the assessment does not violate ex post facto principles.

## V.          Time-Payment Fees

**¶11**          The court did not err in imposing two time-payment fees. Arizona Revised Statutes § 12–116(A) provides that "a fee of twenty dollars shall be assessed on each person who pays a court ordered penalty, fine or sanction on a time payment basis . . . ." Cabrera-Ortega argues that the court erred in imposing two time-payment fees in the same case. But this is proper because "one time payment fee should be imposed on each count or case in which a time payment plan is approved, even though that plan may include, for example, a fine, a felony assessment, and restitution." *State v. Pennington*, 178 Ariz. 301, 303 (1994). The sexual assault and probation offenses are treated as separate counts. At the sentencing hearing, the court read a $20 time-payment fee associated with one count of sexual assault. The court then read a separate $20 time-payment fee for one probation count. The court's ordering two time-payment fees suggests an intent to order two separate payment plans. The court therefore did not err.

## CONCLUSION

**¶12**          For the foregoing reasons, we vacate the $13 criminal penalty assessments but affirm the address confidentiality program assessment, sex offender registration fee, DCAC or sexual assault assessment, and time-payment fees.

